## I. & G. N. R'Y Co. v. A. C. IRVINE.

### (Case No. 1852.)

1. AMENDMENT — LIMITATION.— An amendment which differs from the original petition only in stating more fully the result of injuries caused by defendant, does not set up such a new cause of action as would let the statute of limitations run between the filing of the two petitions.

2. DAMAGES — EVIDENCE.— In a damage suit for bodily injury, petitioner can allege the resulting necessity for a dissolution of a partnership of which he was a member, for the purpose of showing how far the injury disabled him from pursuing his ordinary occupation. If a plaintiff sought damages based upon such a dissolution, a question would arise as to the admissibility of evidence, and it would become necessary to decide whether the dissolution was the proximate result of the injury; but when he alleged the dissolution merely to show the extent to which he was disabled, no such question could arise.

3. PASSENGER — RAILWAY COMPANY.— In a suit against a railway company for damages, it was no error to charge that, "if defendant accepted plaintiff's fare and allowed him to ride upon a freight train, he was a passenger within the meaning of the law, and defendant was bound by the same degree of care as though it was a passenger train." Following Ohio & Miss. R'y Co. v. Dickerson, 59 Ind., 317, and other cases.

4. PRACTICE — ASSIGNMENTS OF ERROR.— Assignments that point out no particular error, and are but an invitation to the court to search the record for an error, are too general to be considered. The statute and rules made for the government of our courts declare that "errors not so distinctly specified (as the rules require) shall be considered by the supreme court or court of appeals as waived."

5. LANGUAGE OF COUNSEL — NEW TRIAL.— Improper language of counsel should be presented in the motion for a new trial, in order to allow the court before which the matter transpired an opportunity of passing upon the question. The use of improper language in argument by counsel furnishes ground for reversing a judgment only in cases in which the preponderance of evidence seems against the verdict, or the verdict is excessive, and there is reason to believe that the verdict may have been affected by the conduct of counsel. Litigants are not to be punished by reversals for improprieties of their counsel, unless there is reason to believe that such conduct affected the merits of the case.

APPEAL from Wood. Tried below before the Hon. Felix J. McCord.

Appellee sued for damages for personal injury caused by negligence of appellant and its servants and agents, alleging that about the 26th of February, 1883, he paid the fare demanded of him by the conductor of appellant's train for a first-class seat on appellant's train from Tyler to Mineola; that appellant, through the conductor, received his fare, and thereby agreed to safely transport and deliver appellee at the passenger depot of appellant in Mineola; that appellant did not do this, but stopped its train a half mile from the depot, and the conductor on the train told appellee to get off, that the

train would go no further; that it was night when the cars were
stopped, and appellee, in getting off the train as ordered, could not
see, fell, and was injured; that "petitioner fell about five feet to the
ground and was knocked by the shock of the fall entirely lifeless,
and his left arm striking some hard substance, was badly broken and
shattered at the elbow joint; that in consequence of said *injuries* he
was confined to his bed under treatment of physicians five or six
weeks; that he suffered painfully from his *wounds*, and that his
arm is now stiff from the effects of said injury, and that he cannot
now get his left hand to his mouth in consequence of the stiffness
of the elbow joint; that in consequence of said injuries he is a
cripple for life."    Damages laid at $20,000.

On the 18th of May, 1885, after the first trial of the case, and
after the judgment therein rendered had been reversed by the su-
preme court and the case remanded for another trial, appellee filed
his first amended original petition, in which no material change was
made in alleging his cause of action.    His allegations as to damages
were materially changed, and were as follows: "That it being a
very dark night at the time the train arrived, plaintiff (appellee)
could not see, and stepped off the car steps as ordered by the con-
ductor, and fell about five feet to the ground, and was knocked by
the shock of the fall entirely lifeless, and his left arm striking some
hard substance, was badly broken and shattered at the elbow joint,
and his back badly injured, and two of his ribs were broken, and his
kidneys and bladder and his backbone and his hips have been so in-
jured that at the present time and since the injury he has for days
been unable to go about; that in consequence of the injuries he was
confined to his bed under treatment of physicians for five or six
weeks, and that he suffered painfully from said wounds, both mentally
and physically, and that he continued to suffer both mentally and
physically, and to suffer in every other way that a human being can
suffer from the effects of the wounds; that his arm is now stiff from
the effects of the injury to such an extent that he cannot get his hand
to his mouth, and his back and hips are so injured that he can scarcely
walk, and oftentimes, from the effects of the injuries, is confined to
his bed for weeks at a time, so that, at this time, the 12th day of
April, 1885, he is a cripple for life.    Plaintiff further states that he
was, at the time of the injury, about thirty-five years of age, and in
fine health, and by occupation a merchant and partner in the mer-
cantile establishment to which he belonged, and that his duty in the
house was to travel and transact outside business in the wholesale
department of the house, which is located in the city and county

of Dallas; that the duties of the position require perfect health and physical strength and endurance; that in consequence of those injuries, his usefulness, both mentally and physically, was impaired to such an extent that during the months of February or March in the year 1885, the partnership existing between your petitioner and the other members of the firm was dissolved as to him; that besides the pain and suffering, mentally and physically, to which he was subjected in consequence of the injuries, he has been put to great expense in employing medical aid, to wit, in the sum of $1,000; and that his loss of time is worth the sum of $5,000." Total damage laid at $20,000.

May 26, 1885, appellant filed his second amended original answer, consisting of a general demurrer, five special exceptions, the general issue and special answers of fact. The special exceptions chiefly pointed out that the allegations of the appellee's amended original petition were not sufficiently specific to apprise appellant of what would be proven or attempted to be proven against it, or sufficiently definite as to time to enable appellant to set up the statute of limitations against them. The general and special exceptions together set up limitation as to the new and distinct grounds of damage which are alleged and complained of in the first amended original petition, and not in the original petition of appellee. Appellant pleaded the contributory negligence of appellee, without which he (appellee) would not have been injured; that appellee was intoxicated, and by his own recklessness and carelessness brought his injury on himself; that the train on which appellee was traveling was not a regular passenger train, but was a mixed train, consisting of freight cars, with a caboose attached, in which passengers were permitted to ride for their accommodation; that appellee got off the cars, of his own volition, sooner than was necessary, knowing the train had not reached the depot at Mineola, but that the locomotive pulling the train had been detached temporarily, in order that different cars might be moved to their proper places, and that had appellee remained on the cars a few minutes longer he would have been taken to the depot; that this was customary with the train on which appellee was traveling on its arrival at Mineola, and that this custom was known to appellee; that the train was run, not as a passenger train, but as a freight train, over a short and unprofitable piece of road, which was known to appellee; that appellee was intoxicated when he got off the train, and but for being in that condition would not have gotten off; that he was not ordered to get off, but did so voluntarily; that appellee's arm was restored, or was

in such a condition when he left Mineola, after it had been reset and dressed, that it would have gotten well very shortly, but that it was improperly treated after appellee reached Dallas, and in consequence of that treatment the subsequent injuries and sufferings complained of by appellee resulted, and that they were not caused by appellant. The last paragraph of the answer set up limitation to all the grounds of damage set forth in appellee's first amended original petition, except the simple dislocation of his left arm at the elbow joint.

Appellee's counsel, in his closing argument to the jury, used the following language: "Your plagued railroad is able to bring witnesses here who will swear anything it wants them to swear, as I will prove to you from the testimony of the conductor and negro brakeman before I get through. It is shameful to think that railroads have their lobbyists in the legislature, and that the legislature will not do its duty. We appeal to the juries of the country to keep them in their places." This language was objected and excepted to by defendant's (appellant's) counsel, and the court replied that it was improper, and directed the jury to disregard said language. Plaintiff's counsel then said: "Gentlemen, I take that back."

The following language was also used by appellee's counsel, in his concluding argument to the jury: "Everybody knows that railroad companies carry their cases through all the courts of the country, and never pay any claim against them until the last measure of litigation is exhausted." Defendant's counsel made no objection to this language when uttered, but afterwards presented his bill of exceptions thereto, which was allowed, the court saying: "The above allowed, with this qualification: the court considered the language as in reply of defendant's counsel's argument, and did not stop counsel."

The case was tried in May, 1885. Verdict and judgment for appellee for $5,000.

*F. B. Sexton*, for appellant, on setting up new cause of action, cited: R. S., art. 3202, subd. 1; Hopkins *v.* Wright, 17 Tex., 31; Smith *v.* Fly, 24 Tex., 354.

On the language of counsel, he cited: Willis *v.* McNeill, 57 Tex., 474–6; Tex. & St. Louis R'y Co. *v.* Jarrell, 60 Tex., 270.

*W. B. & G. G. Wright* and *R. N. Stafford*, for appellee, on new cause of action, cited: H. & T. C. R'y Co. *v.* Boehm, 57 Tex., 152; Scoby *v.* Sweatt, 28 Tex., 713; Thouvenin *v.* Lea, 26 Tex., 612, 614;

Sutherland on Damages, 3d vol., pp. 263–268; Wade v. Leroy, 20 How. (U. S.), 34; Pierce on Railroads, pp. 301, 302, 304; Sauter v. N. Y. Central & Hudson River R. R. Co., 66 N. Y., 50; Lyons v. The Erie Railway, 57 N. Y., 489.

On the charge of the court, they cited: Thompson's Carriers of Passengers, pp. 228, 229, secs. 17, 18; p. 200, sec. 4; Hutchinson on Carriers, p. 417, sec. 516; p. 486, secs. 612, 615; p. 402, secs. 500, 501; p. 503, secs. 637–640, 648; p. 504, sec. 637; Indianapolis, etc., R. Co. v. Horst, 93 U. S., 291; Terre Haute & Indianapolis Railway Co. v. Buck, 96 Ind., 346; Central Law Journal, July 18, 1884 (vol. 19, No. 3), p. 50.

Stayton, Associate Justice.— The cause of action stated in the original petition was essentially the same as was alleged in the amendment.

The cause of action was the injury resulting from the alleged negligence of the defendant; time, place and circumstances of which were stated in the original petition, and the amendment did nothing more than to state more fully than did the original the several results of the injury. The court, therefore, did not err in overruling exceptions which presented the statute of limitation as a defense.

We do not understand the petition to allege the dissolution of the partnership of which the plaintiff was a member, for the reason that he was unable, on account of his disabled condition, longer to perform his duties thereto, for the purpose of making the fact of dissolution a ground for damages; but we understand it to be stated for the purpose solely of showing how far the hurt to his person disabled him to follow his ordinary vocation. The hurt would have had the same effect upon his capacity to labor in the given business had he been doing business solely on his own account, as did it in the business in which he was only a copartner.

If the hand of a carpenter or other mechanic be cut off by the negligence of another, it surely would be admissible, in an action to recover damages therefor, for him to state what his business was, what he was accustomed to make in its pursuit, and the effect which the hurt had upon his capacity to pursue that business.

The petition does no more than this, and we are of the opinion that the court did not err in overruling the exception which was urged against so much of the petition.

The court very fully instructed the jury as to the duties of the plaintiff and defendant to use proper care, and left it for them to

determine from the evidence whether the injury resulted from the negligence of the defendant.

If detached portions of the charge alone be considered, they might be thought to violate the rule which forbids a judge to charge upon the weight of testimony. But a charge must not be so considered; its parts must be taken together; and, so taken, we are of the opinion that the charge in this case does not violate that rule.

It was applicable to the facts in evidence, and presented the law proper to be applied to the diverse phases of the case as made by the witnesses for the respective parties.

It is urged that the court erred in the following part of the charge given: "If defendant accepted the fare of plaintiff and allowed him to ride upon a freight train, he was a passenger within the meaning of the law, and the defendant was bound by the same degree of care as though it was a passenger train."

We understand the rule thus announced to be a correct one, and especially so when applied to the facts of this case. Indianapolis & St. Louis R. R. Co v. Horst, 93 U. S., 295; Ohio & Mississippi R'y Co. v. Dickerson, 59 Ind., 317; Thompson's Carriers of Passengers, p. 234, sec. 20, which cites many cases announcing the rule.

The plaintiff was permitted to state, as a witness, that, in consequence of the injuries received, he was unable to perform his duties as a member of the firm to which he belonged, and that, in consequence of this, he withdrew from the partnership.

For the reasons stated in considering the pleading which averred such facts, we are of the opinion that the court did not err in admitting the evidence.

Had the plaintiff sought damages based upon the dissolution of the copartneship, a question might arise as to the admissibility of this evidence; and it would then become necessary to determine whether the dissolution was the proximate result of the injury; but no such question arises in the case, and from the charge of the court, the jury could not have understood that they were authorized to give damage based upon that ground.

The sixth assignment of error, which relates to the introduction of evidence to establish the particular injuries which were set out more definitely in the amended petition than in the original, has been already disposed of in considering the correctness of the ruling of the court in overruling the exceptions which set up limitation in bar of the action set up by the amendment.

The eighth assignment of error is: "The court erred in refusing

to give to the jury the instructions asked by defendant numbered from one to eleven, inclusive."

Under well settled rules this assignment is too general to be entitled to any consideration. It points out no particular error, and is but an invitation to the court to make search through ten pages of the record if possible to find some error. This it is not the duty of the court to do, and it will not voluntarily assume it.

We deem it proper, however, to say that in the matters presented by brief of counsel, under this assignment, there was no error.

The ninth assignment is: "The court erred in refusing to grant a new trial to the defendant on all the grounds set out in the plaintiff's motion therefor, but especially on all the grounds in said motion numbered from six to twelve inclusive, which are hereby specially referred to and made part of this assignment."

There were twelve different grounds set out in the motion for a new trial.

The statute, and the rules made for the government of the courts, clearly point out how assignments of error shall be made, and declare that "errors not so distinctly specified shall be considered by the supreme court or court of appeals as waived." R. S., 1037; Rules 24, 25 and 26.

That the assignment above quoted does not distinctly specify the grounds of error relied on is too evident, and it must be deemed a waiver of any errors which may have been committed, as fully as though no assignment had been filed, based on the action of the court in overruling the motion for a new trial.

The language used by counsel for the plaintiff was improper and should not have been used; but we are of the opinion that one who desires to avail himself of an objection to such a course by counsel for the adverse party should present it in a motion for new trial, that the court before which the matter transpired may have an opportunity to pass upon the question whether such language probably affected the verdict.

The reasons for this are manifest. No such course was pursued in this case.

The use of improper language or course of argument by adverse counsel, within itself, furnishes no sufficient reason for reversing a judgment; and it is only in cases in which the preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes a ground for reversal.

Parties are not to be punished by reversals for the improprieties of their counsel, unless there is reason to believe that the course pursued affected the merits of the case.

We see no reason, in this case, to believe that the language of counsel had an effect upon the jury. There was conflicting evidence, but it cannot be said that the verdict is not sustained by the preponderance of the evidence, nor that it is excessive.

We find no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered October 23, 1885.]