J. W. Cruseturner v. International & Great Northern Railroad Company.

Decided March 15, 1905.

**Carrier of Passengers—Negligence—Pleading.**

Petition in case of stock shipper, transported in caboose of train to look after his cattle, and injured by falling into a river over which the train was stopped at night, held to allege a case of negligence in failing to notify plaintiff of the danger in leaving the car at such place—an act which the carrier's servants might have anticipated from the fact that the caboose was not provided with closets for the necessities of passengers, and that plaintiff was required to look after his cattle from time to time during stops.

Error from the District Court of Hays County. Tried below before Hon. L. W. Moore.

*Will G. Barber,* for plaintiff in error.—Appellant was a passenger for hire, and being such, the appellant owed to him the duty to "exercise such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them as would be used by very cautious, prudent and competent persons under similar circumstances, and any failure to exercise such a degree of care as to a pas-

senger is negligence." Indianapolis & St. L. Ry. Co. v. Horst, 93 U. S., 291; Missouri P. Ry. Co. v. Ivy, 71 Texas, 409; International & G. N. Ry. Co. v. Irvine, 64 Texas, 529; Hardin v. Railway Co., 33 Texas Civ. App., 448, 77 S. W. Rep., 431; International & G. N. Ry. Co. v. Clark, 36 Texas Civ. App., 195, 81 S. W. Rep., 821.

Under the facts alleged in the petition the court was not justified in saying that as a matter of law same showed no liability upon part of defendant for the injuries sustained by plaintiff. International & G. N. Ry. Co. v. Downing, 16 Texas Civ. App., 643, 41 S. W. Rep., 190; Receivers v. Armstrong, 4 Texas Civ. App., 146; Cockle v. Railway, 27 L. T. Rep. (N. S.), 320; Cartwright v. Railway, 52 Mich., 606; Brassell v. Railway, 3 Am. & Eng. R. R. Cases, 381 and notes; McGee v. Railway Co., 92 Mo., 208; Illinois C. Ry. Co. v. Crady, 69 S. W. Rep., 706; Railway Co. v. Scott, 11 S. E. Rep., 404; Sweet v. Railway Co., 67 S. W. Rep., 4; St. Louis, I. M. & So. Ry. Co. v. Farr, 68 S. W. Rep., 243; 5th A. and E. Enc. of Law, 581; Taber v. Railway, 71 N. Y., 493; New York C. Ry. Co. v. Lockwood, 17 Wall., 357; 3 Thompson's Neg., sec. 2915; Chicago & A. Ry. Co. v. Winters, 175 Ill., 293; Texas & P. Ry. Co. v. Pollard, 2 App. C. C. (Willson), sec. 481.

*S. R. Fisher* and *J. H. Tallichet,* for defendant in error.—The plaintiff, in traveling as a drover on defendant's freight train, like any other passenger on a freight train, assumed all risk of injury from and can not be heard to complain of those things ordinarily incident to the construction, make-up and operation of such trains. He must allege facts constituting negligence, and unless it appear that there was such negligence he can not recover. It appeared, in this case, that defendant was not guilty of negligence, but that plaintiff's alleged injuries were the result of risks ordinarily incident to travel on a freight train, and to his own negligence. Missouri Pac. Ry. Co. v. Ivy, 71 Texas, 409; Ft. Worth & D. C. Ry. Co. v. Rogers, 24 Texas Civ. App., 383, 60 S. W. Rep., 61; Oviatt v. Dakota C. R. Co., 43 Minn., 300, 45 N. W. Rep., 436; Whitehead v. St. Louis, I. M. & S. Ry. Co., 39 Am. & Eng. R. R. Cas., 410, 99 Mo., 263, 11 S. W. Rep., 751; Guffey v. Hannibal & St. J. Ry. Co., 53 Mo. App., 462; McGee v. Missouri Pac. Ry. Co., 31 Am. & Eng. R. R. Cas., 1, 92 Mo., 208, 10 West Rep., 282, 4 S. W. Rep., 739; Illinois C. Ry. Co. v. Axley, 47 Ill. App., 307; Ohio Valley Ry. Co. v. Watson (Ky.), 58 Am. & Eng. R. R. Cas., 418, 21 S. W. Rep., 244; Pennsylvania Co. v. Newmeyer, 52 Am. & Eng. R. R. Cas., 454, 129 Ind., 401, 28 N. E. Rep., 860; Ohio & M. Ry. Co. v. Dickerson, 59 Ind., 317; Woolery v. Louisville, N. A. & C. Ry. Co., 27 Am. & Eng. R. R. Cas., 210, 107 Ind., 381, 57 Am. Rep., 114, 8 N. E. Rep., 226; Louisville & N. Ry. Co. v. Bisch, 41 Am. & Eng. R. R. Cas., 89, 120 Ind., 549, 22 N. E. Rep., 662; Chicago & A. R. Co. v. Arnol, 58 Am. & Eng. R. R. Cas., 411, 144 Ill., 261, 33 N. E. Rep., 204; Central R. Co. v. Smith, 76 Ga., 209; Illinois C. Ry. Co. v. Nelson, 59 Ill., 110.

Plaintiff nowhere alleges that it was usual or customary for the caboose of a freight train to be equipped with closets or toilet rooms, but, on the contrary, it is a matter of common knowledge that such is not

the custom, and even if the absence of such convenience were the proximate cause of plaintiff's alleged injury, he can not recover therefor. Same authorities.

Plaintiff nowhere alleges that it was not usual, customary or necessary for freight trains, such as that upon which he was traveling, to stop in situations which might render it dangerous for persons to leave the caboose hurriedly, in the dark, without looking where they were going. On the contrary, it is a matter of common knowledge that such trains must frequently stop at stations, tanks and elsewhere, where from their great length, the caboose is not at a place where persons can safely leave it, on account of embankments, cattle guards and bridges. The stopping of the train, with the caboose in the position alleged by plaintiff, was not, therefore, negligence, but was one of the dangers or risks ordinarily incident to travel on such trains. Same authorities.

Plaintiff's petition wholly fails to allege facts making it the duty of defendant's employes to warn him of the danger attendant upon an attempt on his part to leave the caboose, or showing that said employes had an opportunity to warn him in time to prevent him from leaving the caboose. The care and foresight which they are bound to exercise is in the performance of their duties with reference to the operation of the train, and does not extend to anticipating and preventing acts of rashness on the part of passengers. The employes in charge of the train had the right to presume that the plaintiff would act with ordinary prudence, and were not bound (as plaintiff contends they were) to anticipate any of his actions.

The court did not err in sustaining defendant's general demurrer to plaintiff's petition, because it appeared from the allegations of said petition that plaintiff was guilty of negligence which directly and proximately contributed to causing his alleged injuries. According to plaintiff's allegations, the train stopped at some unknown place, at night, and he hurriedly left the caboose, where, as he alleges, "bright lights were burning," and without looking to see where he was going, without exercising the slightest care for his own safety, stepped blindly out, through the bridge and into the Trinity River. We submit that under the foregoing circumstances there can be no room for ordinary minds to differ, and that the pleadings show beyond question or cavil that the plaintiff was the author of his own undoing. St. Louis S. W. Ry. Co. of Texas v. Martin, 63 S. W. Rep., 1088.

Where, as in the case at bar, it appears from plaintiff's own allegations that he was guilty of negligence which contributed to his injuries, the petition states no cause of action, and the issue of contributory negligence is not a defense to be plead and proved by the defendant, but is embraced in a general demurrer. St. Louis S. W. Ry. Co. of Texas v. Martin, 63 S. W. Rep., 1089; International & G. N. R. R. Co. v. Lewis, 63 S. W. Rep., 1092; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 152; Texas & P. Ry. Co. v. Reed, 88 Texas, 439.

EIDSON, ASSOCIATE JUSTICE.—The only question presented by this appeal for our consideration is the sufficiency of the petition of plaintiff in error to show a cause of action against the defendant in error. Said petition, omitting formal allegations, is as follows:

"Third.—That during the month of February, 1903, long prior thereto and continuously since then the defendant was and has been and is now engaged in the business of a common carrier for hire of passengers, livestock and other freight, and for such purposes has and does own and operate a line of railroad through Hays County, Texas, and the city of San Marcos, and thence through intermediate counties to the city of Palestine, in Anderson County, Texas, and from said Palestine to the city of Longview, in Grimes County, Texas, where it connects with another line of railroad and it and connecting carriers had and have a continuous line of railroad from said city of San Marcos, Texas, to the city of St. Louis, Missouri, and the city of East St. Louis, Illinois.

"Fourth.—That on or about February 22, 1903, plaintiff had at San Marcos, Texas, certain cattle which he desired to ship to St. Louis, Mo., and East St. Louis, Ill.; that he delivered said cattle to defendant, and said defendant entered into a written contract with plaintiff to carry said cattle and this plaintiff to said city of Longview, to be there delivered to the connecting carrier for purpose of being transported to said city of St. Louis and said city of East St. Louis, Ill. That plaintiff does not know and can not state fully the terms of said written contract, other than same is herein stated, but same did provide among other things as herein recited and alleged. And plaintiff does not know exactly the date of the shipment of said cattle and the execution of said contract, and can not state same, but it was on or about February 22, 1903.

"Fifth.—That defendant entered upon the transportation of said cattle under said contract, and also the transportation of this plaintiff as a passenger accompanying the shipment of said cattle; that the train in which and on which said cattle and this plaintiff were carried from the said city of San Marcos to the said city of Palestine consisted of an engine, freight and stock cars and a caboose, in which latter the conductor and brakeman in charge of said train and this plaintiff and other passengers, traveling as he was, were expected to and did ride. That upon said train with plaintiff during the whole time mentioned above there were other passengers traveling like this plaintiff in charge of livestock in said train, and the said caboose was the only car furnished them and this plaintff to ride in, and they were under the rules and regulations and the customs of defendant expected and required to ride therein.

"Sixth.—Under the terms of said contract, and under the then long established rules and customs of defendant, it was the duty of this plaintiff and other persons traveling on said train in charge of stock to look after stock, to keep them from getting down, to cause them to get up whenever they should lie down, which they would and did do from time to time, and generally to be vigilant and diligent in the watching of said cattle; and that in order to perform said duty it was necessary and customary for plaintiff and those traveling upon said train for a like purpose, to alight from said caboose from time to time as same would and did stop, and by walking along on the ground by the side of the cars in which the stock were to observe their condition,

and to cause any down to get up, and take such other action as the condition of the stock rendered necessary.

"Seventh.—That said caboose was not fitted with and had no toilet or closet, to which the plaintiff or any other person could resort when it became necessary to respond to a call of nature; and that whenever it became necessary (from time to time in the course of traveling upon said train as herein alleged) for this plaintiff, the other passengers thereon and the employes of defendant to respond to such a call, they found it necessary to and did in fact go from said caboose on to the ground for such purpose.

"Eighth.—That in the course of looking after such stock, and in the course of responding to such calls of nature, it became necessary for some one or more of such passengers, including this plaintiff, to go and alight from said caboose to the ground, and they did in fact do so at nearly all, if not quite all the stops made by said train en route from said city of San Marcos to said city of Palestine; that said train did usually and ordinarily stop for only a short time when it did stop, and it became necessary for this plaintiff and such other persons, when alighting from such train, to do so hurriedly, so as to return to said train before the same again started, which it was accustomed to do without notice to any of such passengers and without waiting for them.

"Ninth.—That all the facts and conditions herein alleged were then and there known to defendant and its servants, agents and employes in charge of and operating said train from the time it so left San Marcos until the receipt of the injuries by plaintiff as hereinafter alleged.

"Tenth.—That said caboose did then and there have, for the purpose of entering and leaving same, doors and steps at each end and also at the side.

"Eleventh.—That during the night of on or about February 22, 1903, and when only a few miles from the said city of Palestine and at the crossing of said railroad over the Trinity River, the said train stopped; that stopping as it did placed the said caboose in which plaintiff and other passengers were immediately over said river, and upon the bridge spanning same; that in the said caboose bright lights were burning, but none were burning outside thereof or on the sides thereof; that the night was intensely dark and that plaintiff in going from said caboose, as hereinafter alleged, did not and could not see or know that said caboose was standing over said river; but he supposed and thought same was at a place where he could alight safely upon the ground.

"That said train had already then passed the last station prior to reaching said city of Palestine, and as said train, prior to so stopping and was proceeding towards, this plaintiff and other passengers thereon knew that said Palestine was the next station at which said train would ordinarily stop, and they did not know that there would be any other stop prior to reaching said Palestine, and they then and there supposed and believed and had good reason to suppose and believe that when said train next stopped same would be in the yards of defendant then and there located at Palestine; and the employes of defendant in charge of said train, including the conductor thereof, knew or in the exercise of

ordinary care and forethought must and would have known, that such passengers, including this plaintiff, did and would so suppose and believe.

"Twelfth.—That when the said train so stopped over the said river and upon said bridge, the conductor and other employes of defendant operating said train, as well as this plaintiff and other passengers were in said caboose; that said conductor and such other employes knew that said caboose was standing over said river, but such fact was wholly unknown to plaintiff, who then and there believed and had good reason to believe that same was in the yards of defendant's station at Palestine; that while so stopped over said river, one of the employes of defendant so operating said train, arose and went out for the purpose of responding to a call of nature himself; that said employe went out of and at the door in the front end of said caboose, and went upon the top of a car in front thereof to relieve himself, but in so doing he passed out of the sight of this plaintiff at the door, and this plaintiff supposed and had reason to believe and did believe such employe had gone for such purpose upon the ground alongside of the caboose, as had been the custom and practice of the persons so traveling upon and with the said caboose and train. That at that particular time this plaintiff was awaiting an opportunity to relieve his bowels, and being ignorant of the dangerous location of said caboose, but supposing same was in the said yards of defendant at Palestine, and that he could safely alight to the ground, and seeing the said employe of defendant going out for a like purpose, this plaintiff did go from said caboose at its side door, and did fall and receive the injuries herein alleged. That the purpose of plaintiff in so going from said car or caboose was two-fold, that is, to first attend to the then pressing call of nature, and secondly to look after the said stock so in his charge, if time yet remained before the starting of said train.

"That the conductor and other employes and servants of defendant in charge of and operating said train and controlling same then and there knew, or in the exercise of ordinary care could have and would have known that this plaintiff and other persons in said caboose were liable to undertake to alight therefrom while so stopped; that they could not see or know the danger of so alighting and that unless warned of such danger they would probably undertake to alight and receive injuries, as plaintiff did receive, but, notwithsanding this, they negligently stopped said train with the caboose on said bridge and negligently failed to in any manner warn plaintiff of the danger, and plaintiff did not, and in the exercise of ordinary and proper care could not and did not, discover such danger, and in so attempting to alight, plaintiff was in the exercise of due care.

"That as the said caboose then stood, the steps at the side exit, where this plaintiff and other passengers were accustomed to enter and leave same, stood out over the track under same, so that one in stepping from said steps would, instead of stepping upon the ground or track, step or fall into the river below; and this plaintiff did then and there, under the circumstances, and for the purposes hereinbefore alleged, undertake to leave said caboose at said side door, and he fell into said river below, and in so doing received great, painful and permanent injuries as herein alleged.

"Thirteenth.—That in so falling and striking against the physical objects encountered, plaintiff's left shoulder was greatly bruised and strained and made stiff and sore, and same yet is as result thereof and will always be stiff, and by reason thereof the use thereof and of the arm is interfered with and lessened; that in his left side one rib was broken and two others injured and fractured; that his neck, shoulders, back and arms were bruised and made sore; that he became wet from falling in the water, and the weather being then very cold, he suffered very much from cold, and took a severe cold in his head and lungs and throat; that he became sick and sore as a result of said injuries, and suffered great physical and mental pain and will hereafter suffer such pain; and by reason of such injuries, his capacity to labor has been lessened and permanently impaired. That plaintiff was then 34 years old, and by occupation a butcher and stockman, and by reason of such injuries he was wholly incapacitated for labor for one month, and lost one month's time, and that such time was reasonably worth $100; and in and by reason of said injuries so received, plaintiff was and is damaged in the just and full sum of seven thousand and five hundred dollars.

"Fourteenth.—That defendant, its servants, agents and employes in charge of said train were guilty of negligence (1) in their failure to provide proper closets upon said caboose; (2) in stopping said caboose immediately over said river in a place of danger and (3) in failing to notify or warn plaintiff that said caboose was so situated, and in permitting him to go from said caboose without such notice or warning.

"And such acts and omissions of negligence and each of them were the direct and proximate cause of the injuries so received by plaintiff."

Defendant in error interposed a general demurrer to said petition in the court below which was sustained and the case dismissed. Plaintiff in error contends that the action of the court below in sustaining said general demurrer and dismissing the case, constitutes reversible error.

We are of opinion that the court erred in its action complained of. The petition of plaintiff in error alleges two states of facts, each of which raises an issue of negligence to be passed upon as questions of fact by the court or the jury trying the case; one of these relates to the duty of the defendant in error to anticipate that plaintiff in error would, under his contract, alight from the train at stops for the purpose of looking after and attending to his cattle; and the other relates to its duty in view of the fact that no accommodations were provided on the train for passengers for attending to calls of nature, to anticipate that plaintiff in error would alight at stops for the purpose of attending to calls of nature. The petition alleges facts from which the jury, or the court passing upon the same without a jury, might find that the failure of the conductor of the train, or other employes of defendant in error present at the time, to warn the plaintiff in error of the danger in leaving the car at the time he left it, constituted negligence. If the conductor or other employes of defendant in error, knowing that the car was on a bridge over the river where it would be dangerous for anyone to go out of the car, and knowing that it was the duty of the plaintiff in error to get off the car at stops to look after and attend to his cattle, or knowing that he might get off to attend to a

call of nature, saw him proceed to go out of the car and failed to warn him of the danger he would encounter, in our opinion such failure might constitute negligence. It would be a question for the jury, or the court passing on the facts without a jury, to determine whether or not, in view of the surrounding and attending circumstances, the defendant in error, in failing to give such warning, exercised the degree of care and prudence imposed upon it by the law. (Missouri Pac. Ry. v. Ivy, 71 Texas, 409; International & G. N. Ry. Co. v. Downing, 16 Texas Civ. App., 643, 41 S. W. Rep., 190; Receivers v. Armstrong, 4 Texas Civ. App., 146; International & G. N. Ry. Co. v. Irvine, 64 Texas, 529; Indianapolis & St. L. Ry. Co. v. Horst, 93 U. S., 291; Taber v. Delaware, L. & W. Ry. Co., 71 N. Y., 493.)

In our opinion the petition of plaintiff in error stated a cause of action against the defendant in error, and the court below erred in sustaining the general demurrer of defendant in error and dismissing the case. And therefore, said judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*