## AMERICAN EXPRESS CO. v. PARCARELLO et al.

(Court of Civil Appeals of Texas. El Paso. Nov. 6, 1913. On Rehearing, Dec. 4 and 8, 1913. Further Rehearing Denied and Dissent Certified to Supreme Court Jan. 15, 1914.)

**1. DEATH (§ 33*)—ACTION FOR NEGLIGENT DEATH—LIABILITY OF CORPORATIONS.**

Under Rev. Civ. St. 1911, art. 4694, authorizing a recovery for death caused by the wrongful act, negligence, or default of another, damages for death may be recovered from a business corporation only where the death was caused by the wrongful act, negligence, or default of the corporation itself, as contradistin-

guished from that of its mere agents and servants.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 49; Dec. Dig. § 33.*]

2. DEATH (§ 33*)—ACTION FOR NEGLIGENT DEATH—LIABILITY OF CORPORATIONS.

Where a local agent of an express company could take out an animal used in driving, where it for any reason became unfit for service, and could hire another temporarily, his duty to displace unsuitable animals was the duty of the company, and he represented the company in its corporate capacity, and his negligent failure to displace unsuitable animals was that of the company, within Rev. Civ. St. 1911, art. 4694, authorizing a · recovery for death caused by the neglect of another, though a corporation is liable only when the death was caused by its wrongful act, as contradistinguished from that of its mere agent or servant.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 49; Dec. Dig. § 33.*]

3. ANIMALS (§ 70*)—INJURIES BY ANIMALS—LIABILITY OF CORPORATIONS—NOTICE.

Where an express company retained in its service for five or six months vicious, unruly, and dangerous mules used in its business, the jury could find that it knew, or, in the exercise of ordinary care, could have known, of the viciousness of the mules, so as to charge it with negligence, and hold it liable for death of a person in a collision between vehicles as a result of the viciousness of the mules.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 225, 228–237; Dec. Dig. § 70.*]

4. DEATH (§ 104*)—INSTRUCTIONS—CONSTRUCTION.

In an action for negligent death in ·a collision between vehicles, caused by the viciousness of a team of mules belonging to defendant, a corporation, an instruction that if the team was uncontrollable and was known to be so by defendant, or would have been known to be so by the exercise of ordinary care, and if the collision was caused by the fact that the team was uncontrollable, and defendant in the exercise of ordinary care should have foreseen that an accident of like character was liable to happen, it was liable, predicated liability on the negligence of defendant as distinguished from the negligence of its agents or servants.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 142–148; Dec. Dig. § 104.*]

5. APPEAL AND ERROR (§ 216*)—OBJECTIONS—INSTRUCTIONS—REQUESTS—NECESSITY.

Where an instruction in an action against a corporation for negligent death predicated liability on the negligence of the corporation, but did not define the relationship of a vice principal, as distinguished from a mere agent or employé, the corporation, desiring a more complete instruction, must request one or it cannot complain on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. § 627.]

6. CORPORATIONS (§ 428*) — NOTICE TO AGENTS.

A requested instruction in an action against a corporation for negligent death in a collision between vehicles, caused by the viciousness of a team of mules belonging to the corporation, which makes the liability of the corporation depend on the knowledge of the character of the mules by an officer or officers, is properly refused, since knowledge of any agent sustaining the relationship of a vice principal fixes liability.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761; Dec. Dig. § 428.*]

7. APPEAL AND ERROR (§ 216*)—INSTRUCTIONS—REQUESTS—SUFFICIENCY.

A corporation when sued for negligent death must request a correct charge distinguishing between its representatives for whose negligence it is liable, and those for whom it is not, and it cannot complain of the failure of the court to frame correct instructions in lieu of improper requested ones on that subject.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial,. Cent. Dig. § 627.]

On Rehearing.

8. APPEAL AND ERROR (§ 688*)—QUESTIONS REVIEWABLE — IMPROPER ARGUMENT OF COUNSEL—BILL OF EXCEPTIONS.

Under Courts of Civil Appeals rules 39, 41 (142 S. W. xx), requiring counsel to confine the argument to the evidence and the argument of opposing counsel, and that the court need not wait for objections when the rules as to arguments are violated, but opposing counsel may ask leave to present his point of objection, a bill of exceptions complaining of improper argument, which sets forth the argument and the exceptions thereto, and the failure of the court to take any action thereon, is sufficient to present the point on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2894–2896; Dec. Dig. § 688.*]

9. TRIAL (§ 121*)—MISCONDUCT OF COUNSEL—IMPROPER ARGUMENT.

Where, in an action against a corporation for negligent death, the case for plaintiffs, decedent's widow and children, depended on the testimony of two witnesses who had made statements to the corporation which conflicted with their testimony, and the testimony of other witnesses was in harmony with the statements, and there was nothing° to show that the statements were improperly obtained, the argument of plaintiffs' counsel asking the jury whether they would take the statements against the sworn evidence in behalf of plaintiffs, and inquiring whether it was fair to them to take from them their rights on statements obtained ex parte, and that it was a rule among corporations to take statements, and that there was no more reprehensible practice than that of taking statements and bringing them into court to contradict a witness, and then denounce him as a liar, was reversible error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 294–298, 300; Dec. Dig. § 121.*]

Higgins, J., dissenting in part.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by Lena Parcarello and others against the American Express Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, Walter H. Walne, and Jesse Andrews, all of Houston, for appellant. John Lovejoy and J. W. Parker, both of Houston, for appellees.

HIGGINS, J. This suit was brought by the surviving wife and children of Peter Parcarello against the American Express Company for damages arising from injuries resulting in death, under the second subdivision of article 4694, Revised Civil Statutes of 1911. The deceased received the injuries from which death ensued by being

thrown from a wagon in which he was sitting on Main street in the city of Houston, when one of the defendant's wagons, driven by one of its employés, came in contact therewith. It was averred that the mules drawing the wagon were headstrong, hard-mouthed, unbridlewise, unruly, and uncontrollable; that the defendant was negligent in employing said mules in drawing its wagons, knowing them to be of the character and disposition described, or of which it would have known by the exercise of ordinary care. We find that the deceased came to his death through the negligence of defendant, and upon his part that he was free from negligence contributing to his injuries.

[1] Under the second section of the article quoted above, damages on account of injuries resulting in death may be recovered of a corporation such as appellant only when the death of deceased is caused by the wrongful act, negligence, unskillfulness, or default of the corporation itself, as contradistinguished from that of its mere agents and servants. Fleming v. Texas Loan Agency, 87 Tex. 238, 27 S. W. 126, 26 L. R. A. 250.

[2] It is insisted the evidence wholly fails to convict appellant of negligence in employing in its service the mules in question; that the negligence of its local agent, Frazier, in this respect cannot be imputed to the company, as he was not a vice principal, and a peremptory instruction in its behalf should have been given. In this view we cannot concur. It is quite true the drivers Thrift and Chandler were mere employés, and that their knowledge of the vicious, unruly, and dangerous disposition of the animals would not convict appellant of negligence in retaining them in use, but the knowledge of Frazier would. While Frazier had nothing to do with the original selection of the animals and their installation in the company's service, and the agent of the company who did so may have been free from negligence in this respect, yet the evidence discloses that, if an animal for any reason became unfit for service, Frazier had the authority to take him out and hire another one temporarily until he could procure a proper one from Kansas City, at which point the company procured its animals and had a man to make purchases for it. In respect to his duty to displace unsuitable animals, Frazier performed a corporate duty, and acted not as a mere agent or employé, but represented appellant in its corporate capacity, and as its alter ego. His negligence in this respect was the negligence of the company.

[3] If it should be conceded that he was not the vice principal of the company in this matter, nevertheless the fact remains that the mules had been in the service for five or six months. During all this time the evidence shows them to have been vicious and dangerous. Their employment for this length of time is sufficient to support a finding that appellant knew, or, in the exercise of ordinary care, would have known, of their vicious and dangerous character.

[4, 5] Paragraph IV of the charge to the jury reads: "Now, therefore, if you shall believe from a preponderance of the evidence that the mules driven by Thrift were of an unruly and uncontrollable disposition, and were known to be so by defendant, American Express Company, or would have been known to be so by said company by the exercise of ordinary care, and believe the wagon drawn by said mules, while being driven by said Thrift in the business of the said company, came into collision with the wagon in which the deceased Parcarello was, and thereby threw or caused him to fall from said wagon to the pavement of the street and be injured substantially at the time and place and in the manner alleged by plaintiff, and that as a result of such injury he died, and you believe the coming into collision of the wagon drawn by the said mules with the wagon in which the said Parcarello was, if it did that, was due to unruly and uncontrollable conduct on the part of one of said mules, and believe defendant in using said mule for drawing its wagons, in the exercise of ordinary care, should have foreseen that an accident of like character was liable to happen, and believe defendant in using said mule for drawing said wagon was guilty of negligence under the circumstances, and believe said negligence was the proximate cause of the injury and death of said Parcarello, you will return a verdict for plaintiffs, but, unless you so find, you will return verdict for defendant."

The paragraph quoted is criticised in the following particulars: (a) It was erroneous to instruct that the company was liable for negligence in the particulars enumerated, without limiting the acts of negligence for which it would be liable to those of a vice principal or officer authorized to represent it in its corporate capacity. (b) The charge should have affirmatively eliminated the negligence of the company's servants and agents as a basis of recovery. (c) The charge as given fixes liability for the negligence of defendant's servants and agents. As to this last criticism, it is not well taken. The charge predicates liability upon the negligence of the company in accordance with the statute, and not upon its agents or servants. The other objections are likewise without merit. It is true the charge does not define the relationship of a vice principal, as distinguished from a mere agent or employé, but there is no positive misdirection, and if appellant desired more complete instructions in this respect, it should have requested same. The error was of omission and is not reversible. Parks v. Ry. Co., 100 Tex. 222, 94 S. W. 331, 98 S. W. 1100; Ry. Co. v. Motwiller, 101 Tex. 521, 109 S. W. 918; Ry. Co. v. Dumas, 149 S. W. 543; Freeman v. Cleary, 136 S. W. 525; Ry. Co. v. Hampton, 142 S. W. 93.

[6] Considering the charge as a whole and

in connection with the special charge given at appellant's instance, it is not subject to the objections urged under the third assignment. Ry. Co. v. Berry, 47 Tex. Civ. App. 327, 105 S. W. 1020; Ry. Co. v. Morrison, 46 Tex. Civ. App. 186, 102 S. W. 145; Ry. Co. v. Ochiltree, 104 Tex. 265, 136 S. W. 767; Womack & Sturgis v. Ry. Co., 100 Tex. 455, 100 S. W. 1151.

Appellant requested special charges which read:

"No. 4. A private corporation such as is the American Express Company is not liable for injuries resulting in death from the negligence of its servants or agents, but is liable in no case for such injuries, unless the death was caused by the negligence of some officer or officers of it authorized by it to represent it in its corporate capacity. If you believe from the evidence that no officer of the American Express Company authorized by it to represent it in its corporate capacity knew of the character or disposition of the mules driven by Thrift, or would have known of the same by the exercise of ordinary care, you will return a verdict for the defendant, American Express Company, although you may believe from the evidence that one or more of its agents not so authorized to represent it knew of the character or disposition of said mules, and further believe that said mules were of an unruly and uncontrollable disposition."

"No. 6. If you believe from the evidence that only an agent or agents of the American Express Company knew of the character or disposition of the mules which Thrift was driving, and that their character or disposition was not known by any officer or officers of the American Express Company authorized by it to represent it in its corporate capacity, and would not have been known by them in the exercise of ordinary care, you will return a verdict for the defendant, even though you believe that the mules were of an unruly and uncontrollable disposition, as a corporation such as is the American Express Company is not liable for the negligence of its servants or agents, but only for the negligence of the persons authorized to represent it in its corporate capacity."

"No. 8. If you believe from the evidence that the mules driven by Thrift were permitted to remain in the service by the agents of the American Express Company and not by any officer of the company authorized to represent it in its corporate capacity, you will return a verdict for the defendant."

These charges were evidently intended to supply the omission in the charge noted, so as to make clear the distinction and liability of defendant for the negligence of its representatives, who acted in the capacity of vice principals, as distinguished from mere agents or servants; but the charges in the form requested were properly refused, since the liability of defendant is made to depend upon knowledge of the character of the mules by

an officer or officers, whereas knowledge by any agent sustaining the relationship of a vice principal would fix liability.

[7] The fifth, seventh, and ninth assignments complain that, if these special charges were not correct as drawn, they were nevertheless sufficient to call the court's attention to the omission in its main charge, and the court therefore erred in omitting to frame and give a correct charge upon the subject. The charge of the court predicated liability upon defendant's negligence. This was a correct, general presentation of the issue. If appellant desired a charge which would distinguish between its representatives for whose negligence it would be liable and those for whom it would not, it should have prepared and requested correct charges, and the failure of the court to frame correct instructions in lieu of the improper requested ones presents no error. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Southwestern, etc., v. McBrayer, 140 S. W. 388; Landrum v. Thomas, 149 S. W. 813; Ry. Co. v. Sorey, 142 S. W. 119. The assignments last indicated, as well as the eleventh, are therefore overruled.

Special charge number two was properly refused. It would have authorized the jury to disregard the knowledge of Frazier, who was an agent intrusted with powers which made him a vice principal, with respect to the duty of removing the mules from the company's service, and his knowledge of their nature and disposition was in law the knowledge of defendant.

Under its twelfth assignment of error, appellant complains of certain language used by appellee's counsel, John W. Parker, while addressing the jury. The language objected to was highly improper and justly subjects counsel to criticism for its use. It was uncalled for, and finds no support in the record, and the trial court should have reprimanded him for its use. The majority of this court are of the opinion that the use of this language constitutes reversible error. The writer concurs in the view that the language was improper, but is not of the opinion that it constitutes reversible error. For the reason hereinafter indicated, we all concur in the view that the assignment should be overruled, and it is therefore unnecessary to state our divergent views upon the question of whether or not the use of the objectionable language constitutes reversible error. The bill of exception simply states that defendant in open court excepted to the language used, and that the court made no ruling, did not reprimand counsel for making the remarks, and permitted him to proceed without rebuke. If language be used by counsel in addressing a jury which opposing counsel deem improper, and to which they object, they should, in calling the court's attention to the language which they deem improper, state the grounds of their objection. Unless the bill of exception discloses that

the grounds of objection were pointed out to the trial court, this court will not revise the action of the trial court in failing to rule or act upon such an objection made. It is clearly analogous to objections made to the admission of evidence. The action of the trial court in such matters will not be revised, unless the bill of exception shows the objections made. It has been frequently so held. We therefore all concur in the view that the bill of exception taken to the objectionable language is insufficient to warrant this court in taking any action in regard thereto.

Affirmed.

### On Rehearing.

McKENZIE, J. [8] We are of opinion that the appellant's twelfth assignment of error is well taken, and that the bill of exception in support thereof is sufficient. The bill of exception is as follows: "Be it remembered that upon the trial of the above numbered and entitled cause, while Mr. John W. Parker, attorney for plaintiff, was making his opening argument, he used the following language: 'Now, that is all they have got, those two statements. Will you take them, obtained as they were, against the sworn evidence of these men, in behalf of this widow and her children, and thus deprive this widow and her children, who had no opportunity to be represented? Is it fair, is it just, to the wife and to those children, to take from them their rights on statements obtained in such ex parte manner? Why, gentlemen of the jury, if you can do that, who has any rights in this country? It is a rule among certain corporations, and they make it a practice to take such statements. They go out and take statements. They go out and take statements from their employés when they are in their service, when they are under their influence, when they are in their pay. Then they put them away. Now, then, if in that way they can make testimony that must be accepted by a jury, there is nobody that has any right that is secure against one of them.' To which language of plaintiff's counsel, the American Express Company, in open court, then and there excepted. Be it remembered that the court made no ruling and took no action on the objection of defendant American Express Company so made, and did not reprimand counsel for the remarks so made, and counsel for plaintiff proceeded with his argument as follows: 'I want to add right in this connection, and you can except if you wish to, that there is no more reprehensible practice in the administration of justice in this country than this thing of taking these statements and bringing them into the courthouse, and the man, when he takes the witness stand, undertakes to deny them, they bring him forward and attack and denounce him as a liar.' To which statements the defendant,

the American Express Company, again in open court excepted, and the court failed to take any action thereon, but permitted counsel to proceed without rebuke. * * *"

The following rules governing the district and county courts (142 S. W. xxi) are applicable to and govern the practice where improper argument is being made:

"Rule 39. Argument on the facts should be addressed to the jury when one is impaneled in a case that is being tried under the supervision of the court. Counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel. Mere personal criticism by counsel upon each other shall be avoided, but when indulged in shall be promptly corrected as a contempt of court."

"Rule 41. The court will not be required to wait for objections to be made when the rules as to arguments are violated, but if they should not be noticed and corrected by the court, opposing counsel may ask leave of the court to rise and present his point of objection."

It will be seen from an examination of the above rules that a sharp distinction is made as to the requirements of a bill of exception taken to improper argument and of a bill of exception taken to the admission or exclusion of testimony. The latter is controlled by rules 57, 58, and 59 (142 S. W. xxi), which require that the objection shall be stated with enough of the evidence or facts proved in the case to make intelligible the ruling of the court excepted to in reference to the issue made by the pleading. We are therefore of opinion that we erred in our original opinion in holding the bill of exception insufficient.

[9] The majority, Justice HIGGINS dissenting, are of opinion that the remarks of plaintiff's counsel, as complained of, constitute reversible error. The witness Thrift, who was at the time of the accident in the employ of the defendant company driving the mules, voluntarily made and signed one of the written statements as introduced in evidence. In this statement, he describes the accident as follows: "I unblocked my team, mounted seat of my wagon, backed team several feet to clear delivery wagon, and then turned directly towards middle of street; after the front of wagon, or front wheels of my wagon, clearing delivery wagon some six feet, I directed my team straight down the street, facing north; this necessitated another turn, but left three or four feet for the hind wheel of my wagon to clear the delivery wagon; while passing the delivery wagon, the mule attached to same became unruly, stepped backwards, and hung my hind wheel with hind wheel of delivery wagon, this, for the reason that my team was moving, caused delivery wagon to be tilted up in rear. I judge that hind wheel of delivery wagon was raised two feet from ground. I had my team

under control, in fact, they were stepping slowly, and when I felt the wagons collide I immediately stopped my team, backed the wagon, which let the delivery to ground. In the meantime, the occupant jumped, or fell, or stumbled. * * * In connection with this affair, I will state positively that my wagon did not run into delivery wagon, but that the mule attached to delivery wagon stepped back sufficiently to cause the rear of that wagon to collide with mine; my front wheel cleared the delivery wagon's hind wheels at least six feet, and the hind wheels of my wagon should have also cleared about five feet, as I was turning my team north when the collision occurred; the second turn of my team would naturally throw the hind wheel of my wagon nearer the delivery wagon, and I had made ample allowance for the clearance. I do not know what caused the delivery wagon mule to back, it is possible that driver wanted to back into place that my wagon—formerly occupied by my wagon, for the reason that delivery was too far in the street to avoid passing traffic. The mule, before and after the collision, appeared to be much excited."

The witness Free was not in the employ of the defendant company. The next day after the accident, he 'phoned the defendant's agent that he had witnessed the accident and offered to make a statement. He describes the accident as follows: "The first I noticed was that Parcarello's mule was unruly, and backing to and fro as if scared of some obstacle near him; the next thing I noticed was that his hind wheel became hung with hind wheel of express wagon; this raised the grocery wagon up at rear about two feet, more or less, from ground; the express driver was walking his team, stopped immediately, backed his wagon, and let the grocery wagon down. However, before this was done, the occupant of the grocery wagon jumped out in direction of automobile, and landed on his face, as far as I could see."

The record discloses that Thrift and Free were the only eyewitnesses testifying upon the trial to any misconduct on the part of the mules of the express wagon at the time of the accident. Without their testimony, appellees had failed to make even a prima facie case against the appellant. Their testimony was a contradiction in every material particular of their signed statements, which they each had voluntarily made when the facts pertaining to the accident were fresh in mind. Their testimony was also a contradiction in every material particular of the testimony of three other witnesses. Thrift and Free and the three witnesses were the only witnesses testifying in the case who saw the accident, and who gave details as to how the accident occurred. The three witnesses' testimony is in complete harmony with the signed statements of Thrift and

Free. Plaintiff's right to recover as against the defendant was dependent entirely upon the testimony of the witnesses Thrift and Free. Their testimony raises a sharp conflict upon the vital issue in the case as to whether or not the defendant was guilty of any negligence causing the accident. The question involved, then, is not one as to the preponderance of the evidence, or that the jury's verdict is excessive, but one rather upon the vital issue as to whether or not the defendant is liable at all. Hence it is seen that as between the voluntary statements of Thrift and Free, corroborated by the three other witnesses, and their testimony upon the trial depends the respective rights of the parties.

An examination of the record fails to disclose any suggestion that the statements were improperly obtained or were obtained for any improper motive; or that certain corporations took statements concerning accidents for the improper purposes indicated; or that the defendant company was one among such corporations guilty of the improper conduct as charged; or that the defendant company had used any improper means or influence in obtaining the two statements. The assertions of the counsel in the opening address to the jury were beside the record.

When the remarks were objected to the trial court remained silent, acquiescent. Plaintiff's counsel, to make sure the advantage gained by this action of the court, proceeded to address the jury as follows: "I want to add right in this connection, and you can except if you wish to, that there is no more reprehensible practice in the administration of justice in this country than this thing of taking these statements and bringing them into the courthouse, and the man, when he takes the witness stand, undertakes to deny them, they bring him forward and attack and denounce him as a liar." To this language the defendant again urged objection, but the court failed to act and remained silent. Can it be said, then, that the remarks of the counsel, when viewed in the light of the court's silence, did not have an improper influence upon the jury, as the same pertained to the vital issue in the case? The majority of this court are of the opinion that said remarks made in the opening argument were calculated to have and did have such an influence; nor can it be said that the experienced counsel, in making the remarks, was indulging in idle talk. We feel constrained to say, as was said by Chief Justice Stayton, in Moss v. Sanger Bros., 75 Tex. 321, 12 S. W. 619: "The course pursued in this case was one that no court of justice ought for a moment to tolerate, and it certainly must be true that the judge who tried this case did not fully understand the language of counsel or he would not have permitted it, would have rebuked it, and ought to have punished its author."

For the reasons indicated, we are of the opinion that the case should be reversed and remanded, and it is so ordered.

HIGGINS, J. (dissenting). I concur in the view of my associates that error was committed in the conclusion originally reached as to the insufficiency of the bill of exception reserved by appellant to objectionable language used by appellee's counsel in argument, and that, if such use constituted reversible error, the motion for rehearing should be granted, and the cause reversed and remanded. However, I adhere to my original view that the use of the objectionable language was not such as would warrant or authorize this court in reversing the case.

In the original opinion, it was held that this court would not revise the action of the trial court in failing to rule or act upon an exception taken to objectionable language of counsel, unless the bill discloses that the grounds of objection were pointed out and called to the attention of the trial court. The writer still thinks such should be the rule, although, in writing the original opinion, he was aware of the fact that the courts had frequently passed upon assignments relating to objectionable language where the bill was similar to the one in the instant case. It is unnecessary to state the reasons for this view, since it appears that the matter is controlled by district court rules 39 and 41 (142 S. W. xx). We were of the opinion that the matter was analogous to objections made and bills taken to the admission of improper evidence. Bills of exception relating to this latter matter are governed by district court rules 57 and 58 (142 S. W. xxi), which are quite different from 39 and 41, and furnish ground for distinction with reference to the sufficiency of the requisites of bills of exception relating to the two subjects. The writer frankly confesses that, in reaching the conclusion expressed in the original opinion, rules 39 and 41 were overlooked, and he was not familiar with Willis v. McNeill, 57 Tex. 473, construing the same. Under the authority of these rules and the case cited, it must be conceded that the bill here in question is sufficient. This being conceded, and adverting now to the position of the majority that the objectionable language constitutes reversible error, an extract from an opinion rendered by Chief Justices Stayton, in Ry. Co. v. Irvine, 64 Tex. 529, is quoted as follows: "The use of improper language or course of argument by adverse counsel within itself furnished no sufficient reason for reversing a judgment; and it is only in cases in which the preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive, and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes a ground for reversal. Parties are not to be punished by reversals for the improprieties of their counsel, unless there is reason to believe that the course pursued affected the merits of the case. We see no reason, in this case, to believe that the language of counsel had an effect upon the jury. There was conflicting evidence, but it cannot be said that the verdict is not sustained by the preponderance of the evidence, nor that it is excessive."

The correctness of the rule there stated has never been questioned. Appellant's brief in this case will be searched in vain for a suggestion or an intimation that the verdict in this case is against the preponderance of the evidence, or that the same is excessive. Not only does appellant fail to make any such contention, but what tangible reason is there to believe that the verdict was affected by the improper language, which, it is said, is a further condition which must be present before the case should be reversed upon such grounds? It cannot be and is not asserted by the majority "that the verdict is not sustained by the preponderance of the evidence, nor that it is excessive"; furthermore, "parties are not to be punished for the improprieties of their counsel, unless there is reason to believe that the course pursued affected the merits of the case." As showing the scope of appellant's contention under its twelfth assignment of error, its propositions in its brief are quoted as follows:

"First Proposition. Where counsel, in his argument to the jury, goes outside of the record and makes to the jury statements of fact that are not supported by any testimony whatever in the record, and, if believed by the jury, are calculated to arouse the resentment or passion of the jury against his adversary, it is reversible error for the trial court to fail or refuse to reprimand counsel, and to fail to instruct the jury not to consider such remarks, and the error so committed is all the more harmful when the testimony in the record is sharply in conflict.

"Second Proposition. Where suit is brought by the widow and children against an express company for damages claimed to have resulted to them from the death of the husband and father, and the evidence is sharply conflicting on the facts relied on by plaintiffs for a recovery, it is reversible error for the trial court to permit plaintiff's counsel, without rebuke, and without instruction to the jury, to disregard the same, to go outside of the record and charge the defendant with being guilty of the reprehensible practice of inducing an employé to sign a false statement as to the facts of the accident to deceased, for the purpose of confronting such employé therewith when he testifies on the witness stand.

"Third Proposition. It is reversible error for the trial court to permit counsel, in an argument to the jury, to charge the adverse litigant with unfair and reprehensible conduct in the absence of any testimony in the record to support such charge."

Nowhere is there any suggestion that the

verdict rendered was against the preponderance of the evidence, or that it was excessive, or that there is any reason to believe that the verdict was affected by the objectionable language. And can it be reasonably contended, and is it contended that, if the court had reprimanded counsel and instructed the jury to disregard the objectionable language, a verdict would have been rendered other than the one which was rendered?

In Freeman v. Griewe, 143 S. W. 736, this court had occasion to pass upon an assignment of error relating to the use of improper language in argument, and, speaking through Chief Justice Peticolas, it was said: "Another contention made by appellant and assigned as error is to language used by Mr. Parker, counsel for appellee, in argument. The exact language used was this: 'After Mr. Griewe was injured, the railroad took him to the hospital and gave him morphine, which disordered his mind so that he had delusions, and now seek to bring these delusions into court and use them to defeat his wife and child. If this can be done, then to hell with the courthouse.' No exception was taken to the language at the time; but appellants contend that it was both profane and violent, and that the jury was manifestly prejudiced thereby. The bill of exceptions shows that defendant's counsel in their addresses to the jury criticised plaintiff's counsel for using the language, and claimed that the same was highly improper. We are of the opinion that none of the language infringes upon the latitude allowed to counsel in discussing the facts as they appear in this case, except the statement: 'If this can be done, then to hell with the courthouse.' It is apparent that this language was highly improper, uncalled for by the facts, and certainly should not have been indulged in. But the question specifically presented to this court is: Should we reverse the case because of the use of this language? The reason of the rule for reversing cases for improper remarks of counsel is that thereby the jury may have been misled, their passions and sympathies aroused so that they are caused to render an untrue verdict. In nearly all of the cases in which reversals have been had for such language, the remarks complained of have extended over some considerable portion of the argument, and it seems to us that, if we believed that the isolated remark here quoted influenced the jury, we should reverse the case; but, if we do not believe that it did have any appreciable influence upon their verdict, we should not reverse the case. As we believe this to be the true test, and as we do not believe that this remark, though highly improper and uncalled for, had any appreciable effect on the result of the case, the assignment is overruled." The improper remarks in the Griewe Case, as here, were made in commenting upon a written statement which conflicted with the sworn testimony given upon the trial, and

the language there used was much more inflammatory and more likely to improperly influence the jury, and yet it was unanimously held that its use did not constitute reversible error, and I see no reason to warrant this court in now departing from the rules there enunciated.

The foregoing views are entirely independent of the recent rule adopted by the Supreme Court for the government of the Courts of Civil Appeals which reads as follows: "No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Rule 62a (149 S. W. x). This rule was adopted for the purpose of preventing reversals for errors of law committed by the trial court, which, while erroneous, did not reasonably indicate that the error was calculated to cause, and probably did cause, the rendition of an improper judgment. The adoption of this rule was a forward step towards the prevention of unnecessary reversals, which has been long delayed, and is in accordance with what is generally conceded by the bench and bar to be a reform much needed, and, in the judgment of the writer, the rule should be enforced wherever it is reasonably applicable, to the end that its beneficent purpose may be accomplished. The question of error presented by the trial court's failure to reprimand and rebuke counsel is surely one where the rule may be applied without conflicting with any rule of law which the Supreme Court could not change by mere court rules. And, considering the question in the light of this rule, what reason is there to believe that the error of the trial court in failing to rebuke or reprimand counsel was such a denial of appellant's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment? Is the judgment contrary to the weight or the preponderance of the evidence upon the issues of negligence? Is the verdict excessive? Is there anything to indicate that an improper judgment was rendered? Appellant does not so contend, and, in the opinion of the writer, there are no facts in the record that warrant this court in assuming that such failure was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in this case. Under this rule, the burden unquestionably rested upon appellant to show injurious consequences and the rendition of an improper judgment. Ry. Co. v. Shinn, 153 S. W. 636.

Believing, under the authorities cited, that the failure of the trial court to reprimand and rebuke counsel for the improper lan-

guage used by him does not constitute reversible error, and believing further that the rule cited above alone would prevent a reversal, I therefore dissent from the action of the majority, and here now enter of record the grounds of my dissent.