## Chicago, Rock Island & Texas Railway Company v. G. J. Long.

### Decided October 26, 1901.

1.—Personal Injury—Measure of Damages—Earning Capacity.

One who is injured by the negligence of another is entitled to compensation for the loss of earning capacity thus sustained, and the fact that when injured he was engaged as a section hand and earning only $1.25 per day, will not prevent his pleading and proving that he was a blacksmith, and capable of earning more at such trade; nor is it necessary for him to allege and prove that such fact was known to the defendant.

2.—Deposition—Suppressing—Impeaching Notary.

Where the notary taking a deposition writes down and reads to a witness answers materially different from those made by him, and thus makes a false certificate, the deposition should be, suppressed on motion, and it is not error to exclude testimony to impeach the notary, he not being a witness in the case.

3.—Personal Injury—Evidence.

In an action for damages for personal injuries it was not error to admit the testimony of plaintiff and his brother that plaintiff could not see and hear and turn his head as well as he could before the accident.

**4.—Assignment of Error—Exclusion of Evidence.**

An assignment of error to the exclusion of certain testimony can not be sustained where such testimony is not stated in' the bill of exceptions, and was in substance and effect admitted.

**5.—Evidence—Opinion of Witness.**

There was no error in refusing to permit a witness who had testified to all the facts attending a collision with a handcar causing plaintiff's injuries to testify that plaintiff knew of the approach of the handcar in time to have avoided the injury.

**6.—Same—Life Expectancy—Expert.**

Although a witness was familiar with plaintiff's physical condition, he did not render himself competent to state the life expectancy of plaintiff before he was injured by merely stating that he knew it as a practicing physician, but did not base his opinion on any mortality tables.

**7.—Contributory Negligence—Charge.**

It was error for the court to refuse to charge in an action for personal injuries that if plaintiff failed to use such care as a person of ordinary prudence would have used under similar circumstances to know of the near approach of the handcar and avoid the injury, he could not recover, where this phase of the defense, if submitted at all in the main charge, was couched in the most general terms.

Appeal from Montague. Tried below before Hon. D. E. Barrett.

*James A. Graham* and *J. A. Chambers,* for appellant.

*L. C. Barrett* and *W. S. Jamison,* for appellee.

STEPHENS, Associate Justice.—This appeal is from a verdict and judgment for $6000, recovered as damages for personal injuries received by appellee June 27, 1898, while engaged in the service of appellant as a section hand. The case has been twice tried. On the first trial recovery was denied upon the ground that the injuries were due to the negligence of fellow servants—the other section hands. The Supreme Court, giving to our statute on that subject a construction at variance °with that placed upon it by the trial court and approved by this court, reversed that judgment and remanded the cause for a new trial.

The testimony on the last trial upon the issue of liability was not materially different from that developed on the first, and tended to sustain the findings of the district judge quoted in the opinion of Chief Justice Gaines on the former appeal, to which reference is here made. See 57 S. W. Rep., 802. It also tended to show negligence on the part of appellee in failing to observe the near approach of the handcar in time to avoid the collision.

The first, second, fifth, tenth, and twentieth assignments of error are overruled, because it has often been held that one injured by the negligence of another is entitled to compensation for the loss of earning capacity thus sustained, whatever may be his trade or profession. Merely because appellee was engaged as a section hand and earning but $1.25 per day when he was injured, did not prevent his pleading and proving

that he was then a blacksmith by trade and as such capable of earning
more than $1.25 per day; nor was he required, as is insisted under these
assignments, to first allege and prove that this fact was known to appel-
lant.   As was said by Chief Justice James in Railway v. St. Clair, 21
Texas Civil Appeals, 345, which case is in point, and in which writ of
error was denied (55 Southwestern Reporter, 16), "we think there is no
rule making the particular calling in which a person was engaged at the
time of his injury, or the wages he was then receiving, the standard of
his damages."

The fourth and fourteenth assignments of error complain of the ex-
clusion of testimony offered by appellant to impeach the notary public
who took several depositions read in evidence by appellee, one of which
was that of a witness who denied in his oral testimony given at the trial
that he had made certain material statements contained in his deposition
which were favorable to appellee.   The notary public was not offered as
a witness, and upon this ground the testimony seems to have been ex-
cluded.

The practice of calling witnesses to discredit the officer taking deposi-
tions in a case is a new one to us, and no precedent is cited by counsel
for appellant to sustain it.   The proper practice when an officer writes
down and reads to a witness answers materially different from those made
by him, and thus makes a false certificate, is to have the deposition sup-
pressed on motion, and this was clearly appellant's remedy in this case.
Railway v. Edens, 35 S. W. Rep., 953; Blum v. Jones, 86 Texas, 492.

The seventh, eighth, and ninth assignments, complaining of the admis-
sion of appellee's testimony to the effect that he could not see and hear
and turn his head as well as he could before he was injured, and the
sixth assignment complaining of the admission of appellee's brother's
testimony to the effect that appellee could not hear as well, are all over-
ruled.   The witnesses were not offered as experts, but to prove facts of
personal experience and observation.   Railway v. Reagan, 34 S. W.
Rep., 796, and authorities there cited; Railway v. Hyatt, 12 Texas Civ.
App., 435; Railway v. John, 9 Texas Civ. App., 342.

The eleventh assignment can not be sustained, because the ground of
objection to the excluded testimony is not stated in the bill of exceptions,
and because the testimony was in substance and effect admitted.

The twelfth assignment is answered by the judge's explanation to the
bill of exception.

The thirteenth error is assigned to the court's refusal to allow witness
Haines to testify that both appellee and his brother knew of the approach
of the handcar a sufficient length of time to enable them to get out of the
way.   The testimony was ruled inadmissible on the objection that the
question called for a conclusion of the witness, and the answer prema-
turely given, which, however, was not formally excluded, tended to sus-
tain the objection, the witness answering before the court ruled, "Why, I
think so."   The witness was allowed to tell all he knew of the facts and
circumstances attending the collision, including what appellee said im-

mediately after he was run over, and the rest, we think, was properly left
to the jury.

The third error is assigned to the admission of the estimony of Dr.
Ewing in answer to the following question propounded by appellee's
·counsel: "About what is his [meaning the plaintiff's] life expectancy
without these injuries, and since that·hurt what would you think his life
·expectancy is?" To which he answered, as shown in the bill of excep-
tions: "But for the injuries he would have lived to˙ be 85 years old;
·since his injuries he will not, in my opinion, live 5 years;" which was
·objected to on the ground that the witness had not shown himself to be
an expert as to life expectancy and qualified to answer the question. Ap-
pended to the bill of exception is the explanation, "that the witness be-
.fore answering the question states that he, as a practicing physician, knew
·what plaintiff's life expectancy was, but not from any mortality table,
taking for granted his age was now 60 years." In the statement of
.facts, which was agreed to by counsel, we find in the testimony of Dr.
Ewing on that subject only the following: "As to his life expectancy
·without those injuries, he was above the average in physical condition.
I believe I am competent to testify upon this fact. I would place his
life expectancy without those injuries until he would be 85 years old, a
·man of his physical condition at 58 years old, when he was hurt. As a
physician, I question very seriously that he will be alive in five years.
:from those injuries." We find the following in appellee's petition:
·"That at the time plaintiff was injured as aforesaid, he was only 58·
.years old, and his life expectancy was about fifteen years," which was
proved as thus alleged in the usual way by a witness offered by appellant.

The question thus raised is by no means free from difficulty, but we
have finally reached the conclusion that the court erred in holding that
the witness, although familiar with appellee's physical condition, ren-
·dered himself competent to state the life expectancy of appellee before
he was injured by merely stating that he knew it, as a practicing physi-
·cian, "but not from any mortality table." The usual and well rec-
·ognized method of proving life expectancy is by standard life tables
:shown to be such by a qualified witness, to which may be added, for the
purpose of varying the conclusion to be drawn from the tables, evidence
that the condition of health and strength is substantially different in a
.given case from that usually enjoyed by persons of the same age. Ab-
bott's Trial Ev., 724; Rogers on Exp. Test., secs. 160, 163. Without
knowing the probable duration of life under ordinary conditions, as
:shown by the mortality tables, the physician in question had no standard
for his estimate of appellee's expectancy of life, enhanced though it may
have been by his being more than ordinarily healthy and strong. But
if we assume that the witness knew what the life tables showed to be
the usual expectation, we are yet unable to see how, as a practicing phy-
·sician, he could cipher out the prospective age of appellee so as to make
it ten years longer than the average. Without some sort of tables or
statistics to guide him, the opinion of a practicing physician as to how

many years a person of usual or unusual health or strength will probably live is, presumptively, no better than the concensus of opinion of twelve laymen chosen for their intelligence and probity. True, it has often been held to be admissible, or at least harmless, for a nonexpert witness to give his opinion in certain cases after stating the facts upon which it is based, but here the testimony was offered as that of an expert without a statement in detail of the facts from which his conclusion was drawn. It was, therefore, likely to have influence with the jury, but how much we have no means of determining. Only we know that the verdict was quite large. As to what must be shown before a witness offered as a medical expert is qualified to testify, see Emmerson v. Lowell Gas Light Co., 6 Allen (Mass.), 146 ; Rogers on Exp. Test., sec. 42.

No other assignment seems to require notice, except the twenty-second, complaining of the court's refusal to give appellant's third special instruction, which sought to cover an omission in the charge submitting the issue of contributory negligence. This special instruction was not as well drawn as it might have been, but it embodied the proposition, that if appellee failed to use such care as a person of ordinary prudence would have used under similar circumstances to know of the near approach of the handcar and avoid the injury he could not recover; which phase of the defense, if submitted at all in the main charge, was covered in the most general terms. At least a majority of us are inclined to the opinion that some such charge as that requested should have been given. We are unanimous in the opinion that the third error requires the judgment to be reversed.

*Reversed and remanded.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.