GALVESTON, H. & H. R. CO. et al. v. FLEMING. (No. 7552.)

(Court of Civil Appeals of Texas. Galveston. March 27, 1918. Rehearing Denied April 25, 1918.)

1. MASTER AND SERVANT ⬳330(3)—TORT OF SERVANT—SCOPE OF AUTHORITY—SUFFICIENCY OF EVIDENCE.

In an action against a railroad and its watchman for the latter's shooting of plaintiff, evidence *held* sufficient to support the jury's finding that the watchman was acting within the general scope of his authority.

2. MASTER AND SERVANT ⬳330(3)—TORT OF SERVANT — UNINTENTIONAL CHARACTER — SUFFICIENCY OF EVIDENCE.

In such action, evidence *held* sufficient to justify the jury in finding that the shot which injured plaintiff was not fired maliciously or with intent to shoot plaintiff, but merely to induce him to leave the railroad yards; the watchman not knowing and having no ill will against plaintiff.

3. TRIAL ⬳350(6)—SPECIAL ISSUES—TORT OF SERVANT.

In an action against a railroad and its watchman for shooting plaintiff in the railroad's yard, the question whether defendant watchman shot plaintiff intentionally presented a pertinent and material issue to be submitted, since if he shot to gratify a private grudge, and not pursuant to his duty to guard the railroad's property, the latter was not liable.

4. MASTER AND SERVANT ⬳304 — TORT OF. SERVANT—LIABILITY.

If a railroad's yard watchman, within the general scope of his employment to protect the railroad's property from depredation, acted unreasonably and negligently in the performance of his duties as he saw them, the railroad was liable for any injury suffered by another thereby, whether the watchman acted upon reasonable appearances or not; he having been made the judge as to when it was necessary to shoot.

5. TRIAL ⬳115(2)—ARGUMENT OF COUNSEL—SPECIAL ISSUES.

The statement of plaintiff's counsel in closing argument to the jury that the reason that counsel for defendants wanted the jury to answer the first question "No" was because they knew that, if the jury answered the question "No," it would end the case, was improper, as where special issues are submitted it is the single duty of the jury to find the facts in support of the issues.

6. APPEAL AND ERROR ⬳1060(1)—HARMLESS ERROR—ARGUMENT OF COUNSEL.

Impropriety of plaintiff's counsel in arguing that defendant's counsel wanted the jury to answer the first special issue negatively because they knew that if the jury so answered the issue it would end the case was harmless, where the jury must have gathered on trial the legal result of a negative finding on the issue.

7. APPEAL AND ERROR ⬳1033(5)—ERROR FAVORABLE TO APPELLANT—INSTRUCTION.

In an action for personal injuries, where all damages allowed by a charge submitting the question of permanent injury were such as were allowable under the law whether the injury was permanent or not, the charge that plaintiff might recover such damages only on proof of permanent injury was favorable to defendant.

8. DAMAGES ⬳130(2)—INJURY TO LEG—EXCESSIVE VERDICT.

In an action against a railroad and its yard watchman for shooting plaintiff in the calf of the leg, verdict for plaintiff for $2,500 was not excessive.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by Andrew J. Fleming against the Galveston, Houston & Henderson Railroad Company and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood and McMeans, Garrison & Pollard, all of Houston, and Jno. L. Darrouzet, of Galveston, for appellants. Frank S. Anderson, of Galveston, for appellee.

LANE, J. This suit was instituted by appellee, Andrew J. Fleming, against the Galveston, Houston & Henderson Railroad Company and R. J. Stanley to recover damages for alleged personal injuries.

The plaintiff alleged that on the 20th day of February, 1917, said railroad company had laid and was maintaining its railroad tracks in, upon, and along Postoffice street, a public street and highway in the city of Galveston, Tex.; that on said date the said railroad company had in its employ one R. J. Stanley as watchman and guard over its properties; that on said date while he (Fleming) was passing along said public street and highway and along one of the railroad tracks of said company, said Stanley, while acting within the scope of his employment and instructions, carelessly, negligently, willfully, and maliciously assaulted and shot him (Fleming) in the leg, thereby seriously and permanently injuring and damaging him, for which he prayed judgment in the sum of $2,500 actual, and $2,500 exemplary, damages. Defendant answered by general demurrer and general denial. The question of exemplary damages was not submitted to the jury, and we shall, therefore, not further refer to this matter.

The case was tried before a jury upon special issues submitted to them, to which they made the following answers: (1) That the defendant Stanley, in the shooting of the plaintiff, was performing an act within the scope of his employment, and in furtherance of his duties for which he was employed by the defendant railroad company; (2) that the defendant Stanley shot the plaintiff unintentionally; (3) that in shooting the plaintiff, the defendant Stanley was guilty of negligence, (4) which proximately caused plaintiff to sustain the injury as alleged by him; and (5) that the amount of damages that would be fair and reasonable compensation for plaintiff's injuries was $2,500. Upon the verdict a judgment was rendered in favor of plaintiff against both defendants for $2,500, from which the defendants have appealed.

[1] By the first, second, and third assignments it is insisted that the court erred in not instructing a verdict for defendants, as requested by the defendant railroad company, for the reason that there was no evidence to prove that defendant Stanley, at the time he shot plaintiff Fleming, was acting within the general scope of his authority as a watchman and guard for the defendant railroad company, and because the testimony failed to show that Stanley, in shooting plaintiff, was acting in discharge of any duty he owed to the defendant railroad company. We do not think there is any merit in the contention of appellants.

It was admitted in evidence that the defendant R. J. Stanley was employed by the defendant Galveston, Houston & Henderson Railroad Company as a watchman and guard in its yards on February 2, 1917, at a salary of $65 per month, and that he was such watchman on the night of February 20, 1917, when appellee was shot, and from the time of his employment to the date of the trial had continuously been in its employment as such watchman and guard. It was further admitted that Stanley was the man who shot the plaintiff.

The undisputed evidence shows that while it was a fact that the point or place at which appellee was shot by Stanley was on Postoffice street in the city of Galveston, it was also within the yards of the defendant railroad company, said street being closed at that point by virtue of a city ordinance; and that where said street entered said railroad yards said company had placed a sign which reads:

"This is the property of the G., H. & H. Railroad Company. Persons entering upon or crossing are trespassers, and assume all risks."

The undisputed evidence also shows that for about three years appellee had passed unmolested over and among appellant's tracks and through its yards, and that many persons had so passed day and night for many years. Appellee Fleming testified that on the night and at the time he was shot by Stanley he was walking along the track of the defendant railroad company; that he met a man (who later proved to be Stanley) who passed by him, and that after the man had passed him the man said, "Stop there!" that he did not stop, but as he thought it might be a burglar he continued to walk on, and that the man fired on him; that after the man fired he (Fleming) continued to walk on off from him, but looked back to see what the man was doing; that he did not then see the man, but that the man then ran around in front of him and shot him in the calf of the left leg. He also testified that when he was shot the man said, "I am the watchman; you get off the track here;" that he could not remember whether he (Fleming) said anything or not; that he did not know what became of the man after he was shot; that he left him immediately; and that he (Fleming) lay on the track about half an hour after being shot. He further testified that the first shot fired by the man was after he told him to stop; that this shot passed close to his head, but did not hit him; that he then turned around to see where the man was, and as he turned back the man shot him in the left leg; that at the time he was shot he had turned around to face the man, and then the man shot him; that, the shot that struck him was fired downward; that he never knew that the railroad company kept a watchman in the yards. Neither of the defendants introduced any evidence, but closed when the plaintiff closed his evidence.

The case of Baker, Receiver, v. Ives, reported in 188 S. W. 950, is a case in which the nature of the suit and facts proven

were very similar to the nature and facts of the present case, except that one Watts in that case testified that he employed one Grace as watchman and guard in the yards of the International & Great Northern Railway Company at Palestine, Tex., and further testified as follows:

"I instructed Mr. Grace at the time of his employment to watch out for these merchandise cars, never making any arrest of anybody unless he actually caught him in the act. I also instructed him that the main line, south, west, and north, had become a public thoroughfare from long usage and to let travelers pass along there, but any one he caught meddling and depredating to put them out. * * * He had no authority whatever to stop or question any one passing along through the yards in the regular way; that was against instructions. I employed him [on] the 11th day of November, 1914, as night watchman, Palestine yard, because so many cars were being broken open and robbed and burglarized, and goods carried away, and it was necessary on account of depredations. * * * Yes; I have heard of several cases of people asking the railroad employés for matches at night, and trying to get their watches or rob them; that is a favorite way and an old way. Yes, it was left to Mr. Grace's judgment on the instructions I had given him to decide whether a man was out of the way, or a suspicious looking character, or not."

In that case the court said:

"Under these authorities, we think it clear that the trial court properly submitted the issue of liability of appellants for the act of Grace in making the assault upon appellee. If, in fact, the appellee had been a thief or depredator upon the property of the appellants, or if his conduct had been such as to lead Grace reasonably to believe that he was such, the latter would certainly have been acting within the scope of his employment if he used all reasonable and proper means to protect the company's property. He was undoubtedly charged by appellants with the authority, and it was his duty to exercise the discrimination necessary to distinguish between burglars, thieves, depredators, and innocent persons, and to make arrests when called for by the circumstances, and to determine the degree of force necessary to be exercised. If, through want of proper care or the exercise of the proper discrimination, he mistook appellee for a depredator or person who otherwise should be dealt with in the manner in which he did deal with him, he was certainly acting within the apparent scope of his employment, and the appellants must be held liable for any want of proper discrimination or improper conduct of his in that respect."

Appellant contends that the opinion in the Ives Case is not applicable to the present case, because in that case there was proof showing what the watchman's duties were under his employment, while in the present case the evidence as to what the watchman's duties were is wholly silent. That in that case it was shown that an innocent man was injured by Grace by reason of the failure of the latter to use ordinary care in using the authority conferred upon him to discriminate between depredators and innocent persons. Here it was not shown that any authority of discrimination was conferred upon Stanley, or that his act was done in the accomplishment of any object for which he was employed.

The contention of appellant cannot be sustained. We think the holding in the case cited is applicable to this case. While it is true that in the Ives Case the instruction to Grace, the watchman, to watch the property of the railroad company and to arrest persons only when he caught them in the act of depredating on such property was expressly given, we think a fair inference is that when Stanley was employed by the appellant railroad company to watch its property he was impliedly instructed to do such things as he might in his discretion think necessary to protect the property of his employer. Any other conclusion seems to us unreasonable and unsound. No one could reasonably conclude that the railroad company in the present case employed Stanley to go in and upon its yards and simply watch persons who were depredating upon or threatening to depredate upon its properties, but to the contrary, reason would force one to the conclusion that Stanley's duties were not only to watch such property, but that he was to take such necessary action as would protect the same from depredation. We therefore conclude that the court did not err in submitting the question to the jury, as to whether Stanley was acting within the general scope of his authority. We also conclude that there was sufficient evidence to support the finding of the jury that he was so acting. We therefore overrule the first, second, and third assignments.

The fourth assignment complains of the action of the court in submitting the question to the jury as to whether or not Stanley was performing an act within the scope of his employment, and in furtherance of his duties for which he was employed when he shot appellee. What we have said under the first, second, and third assignments disposes of this assignment. It is therefore overruled.

[2, 3] By the fifth assignment appellant insists:

That the trial court erred in submitting to the jury the following question, " 'Did the defendant R. J. Stanley shoot the plaintiff intentionally?' for the reason that there was no evidence to justify the conclusion or finding that defendant Stanley shot the plaintiff unintentionally, and all of the evidence introduced in this case upon the issue shows without dispute that defendant Stanley's act in shooting the plaintiff was intentional and not accidental."

We cannot agree with the contention of appellant. Appellant was contending that in accosting and shooting plaintiff, defendant Stanley was not acting within the scope of his employment, but that in doing so he had turned aside from the duties imposed upon him and with malicious intent shot plaintiff. There was no evidence, either direct or circumstantial, that Stanley held any malice or ill feeling toward the plaintiff, or that he knew the plaintiff, or had ever seen or heard of him before the shooting; nor was there any attempt to show such facts; nor was

there any evidence remotely showing that Stanley and the plaintiff had quarreled at the time of the shooting, but upon the contrary the evidence shows that when Stanley saw the plaintiff in the yards of the defendant railroad company he called to him and told him to stop; asked him to stop before he fired the first shot; that the plaintiff continued to walk off from Stanley along the railroad, and that to impress upon plaintiff that he must leave the yard Stanley fired the shot; that after said shot was fired the plaintiff turned toward Stanley, who said to him, "I am the watchman; you get off the track here," and was shot by Stanley in the calf of the left leg. We think there was sufficient evidence to justify the jury in finding that the shot that injured the plaintiff was not fired either maliciously or with the intent to shoot plaintiff, but that the same was fired for the purpose of inducing plaintiff to leave said yard, and not with the malicious intent to wound and injure a man whom he did not know, and against whom he had no ill will. We think the question submitted, of which complaint is made, presented a pertinent and material issue, that there was evidence calling for its submission, and that the trial court properly submitted the same. The fifth assignment is overruled.

[4] By the sixth assignment complaint is made of the refusal of the trial court to submit to the jury the special issue requested by appellant, as follows:

"Was the plaintiff, Fleming, at and just before the time that he was shot by the defendant Stanley, doing any act that would reasonably appear to defendant Stanley that the said Fleming was about to do or was doing any act or thing that would interfere with the use of said property or railroad yards, or to injure, destroy or depredate the property of the defendant Galveston, Houston & Henderson Railroad Company, or to prevent the railroad company from the free use of the same?"

We have already held that the implied duties of Stanley were not only to watch the properties of the railroad company, but contemplated that he would do such acts as reasonably appeared to him to be necessary to protect said properties from depredation of others. He was clothed with the duty of determining when he should act for the protection of said property, and if while he was acting within the general scope of his employment he acted unreasonably and negligently in the performance of his duties as he saw them, his employer was liable for any injury suffered by another by reason of such unreasonable and negligent acts. So then it was an immaterial issue as to whether Stanley acted upon reasonable appearance or not. He was made the judge as to when it was necessary to act by the defendant railroad company, and it is liable for his mistaken judgment when the same results in injury to others. We do not think the court erred in refusing to give to the jury the special charge, the refusal of which is complained of by the sixth assignment.

[5, 6] In his closing argument counsel for the plaintiff said to the jury:

"The reason that they [counsel for defendants] want you to answer the first question 'No' is because they know that, if you answer that question 'No,' it will end this case."

After these remarks were made to the jury counsel for appellant objected thereto, assigning as a reason for such objection that such remarks were improper and prejudicial to the rights of defendants, in that such remarks were in effect advising the jury of the effect and result of the answer they might make to the question as to whether or not Stanley was acting within the scope of his employment in shooting appellee, Fleming. After this objection was made counsel for appellee repeated said remarks. The court did not stop counsel in such argument, nor give any instruction to the jury relative thereto; there being no request for such instruction by appellants. Appellants make these remarks of counsel for appellee the grounds of their seventh assignment.

The argument of counsel complained of was improper, and the court should have stopped it when attention was called to it. In cases where special issues are submitted, it is the sole duty of the jury to find the facts in support of the issue submitted, if any. The jury have nothing to do with the effect of their finding on the parties to the suit. They should not be concerned in the result of such findings. G., H. & S. A. Ry. Co. v. Hodnett, 182 S. W. 7; Fain v. Nelms, 156 S. W. 281. In the case last cited the court said:

"We have no hesitation in saying that the argument was, in the circumstances, improper, and that the court should have stopped it when attention was called to it, and should have instructed the jury to disregard it. The jury, as triers of the facts solely, had nothing to do with the legal effect of their findings. This was a matter which could not properly concern them. They were only to find the facts. The argument came very near a direct invitation to the jury to consider, in finding this fact, what the legal effect would be. The argument should not have been made, nor should the court have allowed it to be made, and to give tacit approval of it by disregarding appellant's objection. In passing upon the question, however, as ground for reversal, its effect on the jury must be considered, and upon this point it must be assumed that during the course of this trial, amid the strenuous conflict between counsel as to the time appellee's adverse possession began, and the amount of evidence on that issue, it must have been a remarkably stupid juror who would not have gathered what would be the legal result of a finding on this issue. We are inclined to the opinion that counsel only told the jury what they already knew, and we cannot believe that they disregarded the evidence and charge of the court, and were influenced by this argument. These improper remarks, we think, ought not to bring upon appellee the penalty of a reversal."

We specially adopt the last portion of the foregoing quotation as a reason why we refuse to reverse the judgment of the trial court in the instant case on account of the argument of counsel, as the language there

used is forcefully applicable to the matter under consideration in this case.

[7] By the eighth assignment it is insisted that the court erred in instructing the jury they might allow damages for permanent injury in the event they found from the evidence that plaintiff's injury was permanent, because there was no evidence tending to show permanent injury. We agree with appellant that there was no evidence justifying the submission of the question of permanent injury, but we are of the opinion that so much of the charge complained of as refers to permanent injury was calculated to be prejudicial to appellee, and was favorable to appellant in this: All the damages allowed by the charge was such as are allowable under the law, if sustained by the evidence, whether the injury was permanent or not, and hence the charge that appellee might recover such damages only upon proof of permanent injury was prejudicial to appellee, and to the same extent favorable to appellant. We overrule the assignment.

[8] We do not feel justified in holding that the verdict of the jury for the sum of $2,500 in favor of appellee is excessive. We therefore overrule the ninth and last assignment.

We find no such error in the trial of this case in the court below as would justify us in reversing the judgment there rendered. The judgment of the trial court is affirmed.

Affirmed.

---

⚖◎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes