GALVESTON, H. & S. A. RY. CO. v. HARLING. (No. 7564.) *

(Court of Civil Appeals of Texas. Galveston. Dec. 18, 1918. Rehearing Denied Jan. 16, 1919.)

1. DAMAGES ⊂⊃173(2)—EVIDENCE—EARNING CAPACITY—MEASURE OF DAMAGES.

In an action for personal injury, plaintiff's testimony as to his income during a period of from 3 to 10 years preceding the accident was admissible, not as a measure of damages, but as a guide in enabling the jury to determine the proper amount by knowing what kind of remuneration would be open to plaintiff in a business he understood, and would and could resume were he not prevented by his injuries.

2. APPEAL AND ERROR ⊂⊃1060(1)—HARMLESS ERROR—ARGUMENT OF COUNSEL.

Remarks of plaintiff's counsel in negligence case that jury could find contributory negligence and turn plaintiff away penniless, while improper, were not reversible error; facts not showing that jury were influenced thereby.

3. EVIDENCE ⊂⊃366(2)—CITY ORDINANCE.

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 821, providing that ordinances printed and published shall be admitted in evidence without further proof, the testimony of the mayor and secretary of a city that an ordinance, limiting the speed of trains, was passed, published, and recorded was sufficient to authorize its admission.

4. MUNICIPAL CORPORATIONS ⊂⊃122(3)—ORDINANCE—EVIDENCE.

It was not error to permit the mayor of the city to testify that an ordinance introduced in evidence was in force and effect at a specified time.

5. RAILROADS ⊂⊃347(8) — CROSSING ACCIDENTS—EVIDENCE.

In an action for injuries received in a crossing accident testimony of the city's mayor and secretary concerning a conversation they had with the officials of the defendant relative to placing a flagman or electric bells at the crossing held admissible, as tending to show defendant's negligence.

6. EVIDENCE ⊂⊃471(24)—CONCLUSIONS.

An objection that testimony that plaintiff, as result of his injuries, could not rise from a sitting posture and walk as well as he could before was a conclusion of the witnesses is without merit.

7. EVIDENCE ⊂⊃492—SPEED OF TRAIN—CONCLUSION.

Evidence of a witness that defendant's train was moving at about 15 miles per hour was admissible, without showing witness' qualification to judge of its speed.

8. DAMAGES ⊂⊃134(1)—EXCESSIVE DAMAGES —EARNING CAPACITY.

Where it was shown that plaintiff had a life expectancy of 15 or 16 years, was permanently injured, totally disabled from performing profitable labor, and for a number of years up until about 2 years previous to injury had earned from $5,000 to $10,000 per year, a verdict for $20,000 is not excessive.

9. DAMAGES ⊂⊃185(2)—PERMANENT INJURIES —EVIDENCE.

Evidence held sufficient to sustain the jury's finding that plaintiff's injuries were permanent.

10. RAILROADS ⊂⊃348(5) — CROSSING ACCIDENTS—SPEED—EVIDENCE.

In an action for injuries received in crossing accident, evidence held sufficient to support finding that defendant's train was running at the rate of 18 miles an hour.

Lane, J., dissenting in part.

Appeal from District Court, Fort Bend County; Samuel J. Styles, Judge.

Suit by W. A. Harling against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, Proctor, Vandenberge, Crain & Mitchell, of Victoria, and D. R. Peareson, of Richmond, for appellant.

Campbell, Myer, Myer & Freeman, of Houston, and C. I. and W. I. McFarlane, both of Richmond, for appellee.

LANE, J. This suit was brought by W. A. Harling against the Galveston, Harrisburg & San Antonio Railway Company to recover damages for personal injuries alleged to have been sustained by him by reason of the negligence of the defendant company in a collision between an automobile in which he was riding and a passenger train at a point where the tracks of said railway company crossed Second street in the city of Richmond, in Ft. Bend county, Tex., on or about the 8th day of April, 1918.

In plaintiff's petition it is alleged that the city of Richmond is an incorporated city, and that at the time of said accident there was in full force and effect a city ordinance, making it unlawful for any railroad engineer, or any other person in charge of a railroad engine, to propel any such engine or any train through any part of said city at a greater rate of speed than 6 miles per hour; that on said date he was an invited guest, riding in a certain automobile controlled by anoth-

———

er; that said automobile was driven by one Epps, a careful and competent driver; that as the automobile in which he was riding as a guest approached and was in the act of crossing the track of the defendant company at the point where Second street in said city of Richmond is intersected by said track, a train thereon, being propelled at a high rate of speed, struck said automobile with great force, threw the occupants thereof forcibly to the ground, and thereby seriously and permanently injuring plaintiff.

It was further alleged that the street crossing at which the collision occurred was a much-used crossing, in fact one of the principal crossings in the city of Richmond, which fact was known to the defendant company, its agents, servants, operators, and employés; that said crossing was and is an extrahazardous and dangerous one, which fact was known to defendant, but unknown to the plaintiff at the time of the collision. The petition contained other allegations as follows:

"(1) That said injuries were further proximately caused by the negligence of the defendant, its agents, servant, operatives, and employés, in propelling and running said train at the rapid and dangerous rate of speed at which it was being run and propelled, as herein alleged, and in violation of the city ordinances of the city of Richmond, as herein pleaded.

"(2) That said injuries were further proximately caused by the negligence of the defendant, its agents, servants, operatives, and employés, in permitting the air brakes on said train to become and remain out of repair and good working order, as herein pleaded.

"(3) That said injuries were further proximately caused by the negligence of the defendant, its agents, servants, operatives, and employés, in not keeping a proper lookout to discover persons in a position of danger on said track, as was plaintiff, as herein pleaded.

"(4) That said injuries were further proximately caused by the negligence of defendant, its agents, servants, operatives, and employés, in not having a flagman or watchman stationed at said crossing, or a bell, or a block, or other safety device to give warning and notice of the approach of trains, engines, or cars, along said track, as herein pleaded.

"(5) That said negligent acts, alone and acting in conjunction with each other, proximately resulted in said train striking and colliding with the automobile in which this plaintiff was riding, and his consequent injuries therefrom.

"(6) That as the direct and proximate result of the negligence, and the negligent act and acts of the defendant, its agents, servants, operatives, and employés, as herein pleaded, plaintiff has suffered great and serious injuries and damages to his body, health, and mind, and has been compelled to spend large sums of money for attempted alleviation of his condition, for medical attention and for nursing, and in other respects, and had been caused to lose his capacity to labor and earn money in the future beyond the trial of this case, and has been caused to endure suffering, great and serious mental and physical pain and anguish, which will, in reasonable probability, continue for the remainder of his life; and that plaintiff has been caused, by reason of said negligent acts on the part of defendant, its agents, servants, operatives, and employés, to spend and incur, and will hereafter be caused to expend and incur, liabilities in large sums, for attempted alleviation of his condition, for medical attention, nursing, and in other respects, all of great value, to his damage in the sum of $50,000."

Defendant, Galveston, Harrisburg & San Antonio Railway Company, answered by general denial and by plea of contributory negligence.

The case was submitted to a jury. After properly instructing the jury as to the meaning of the terms "negligence," "contributory negligence," and "proximate cause," as used in the charge, the court submitted certain special issues. Answering these issues, the jury found, among other things not necessary to be here stated, the following:

(1) That the plaintiff, Harling, was injured at the time and place, and in the manner substantially as alleged in his petition, and that said injuries are permanent.

(2) That the train of defendant which struck the automobile in which plaintiff was riding was being run at the rate of 18 miles an hour as it left the bridge and approached the crossing in the city of Richmond at the time of the collision complained of.

(3) That said train was being operated by those in charge of the engine drawing the same at a dangerous rate of speed to persons about to use the crossing by way of a public street in the city of Richmond, under the circumstances then existing; that the running of said train at such speed under the circumstances then existing was negligence, and that said negligence was a proximate cause of the plaintiff's injuries.

(4) That the crossing at which the collision between defendant's train and the automobile in which plaintiff was riding was at such time a much-used public crossing by the public in the city of Richmond, and that the fact that said crossing was so used was known to defendant at the time of the collision, and had been so known long prior thereto.

(5) That said crossing at the time of said collision was an extra dangerous and hazardous crossing under the then existing circumstances, and this fact was known to the defendant company and the operatives of its train.

(6) That the defendant company had no flagman, signal, or any other device at said crossing to warn persons attempting to cross its railroad track at said crossing of approaching trains or engines along said track at the time of said collision which resulted in the plaintiff's injury, and that such failure to have such flagman, signal, or other device at said crossing was negligence as defined in the court's charge, and was a proximate cause of plaintiff's injuries.

(7) That at the time of the collision plaintiff, Harling, was an invited guest in said automobile.

(8) That the driver of the automobile, Laurence Epps, was not guilty of negligence in driving said automobile on the railway track under the circumstances then existing.

(9) That the plaintiff, Harling, did use such degree of care for his safety as a man of ordinary prudence would have used, under the same or similar circumstances, to discover the approach of the train, which collided with said automobile, before the same was driven upon the track, and to avoid the danger resulting therefrom.

(10) That the plaintiff was not guilty of contributory negligence in entering on the railway track at the time and under the existing circumstances.

(11) That the sum of money which, if paid now, would reasonably compensate the plaintiff for the damages sustained by him as a result of his said injuries is $20,000.

Upon these findings the trial court rendered judgment in favor of plaintiff, Harling, for the sum of $20,000, with 6 per cent. interest thereon from the date of judgment until paid. From this judgment the railway company has appealed.

The substance of the first and second assignments is: First, that the evidence is insufficient to show negligence on the part of the defendant company; second, that if it be conceded that the acts of negligence alleged by plaintiff were shown, still it conclusively appears from the evidence that none of such acts were the proximate cause of plaintiff's injuries, but, on the contrary, it is conclusively shown by the evidence that the negligence of Lawrence Epps, the driver of the automobile, in driving the same upon the railway track in front of the approaching train, under the attending circumstances, was the proximate cause of the plaintiff's injuries; that said negligence of said driver is chargeable to plaintiff, and amounted to contributory negligence on the part of plaintiff; that the evidence shows that the plaintiff was also guilty of contributory negligence in not exercising ordinary care to prevent the driver from so driving said automobile on the track in front of said train; and that such negligence was the proximate cause of plaintiff's injuries. Therefore the evidence as a whole is insufficient to support the findings of the jury that the negligence of defendant was the proximate cause of plaintiff's injuries, and the trial court erred in rendering judgment against defendant upon the findings of the jury.

In view of the fact that these two assignments cover three closely printed pages of appellant's brief, and are followed by 30 propositions, many of which are very lengthy, and they in turn are followed by statements and arguments, all covering 107 pages of the

brief; and in view of the further fact that appellant, in its brief, presents 45 assignments, which are followed by a great number of propositions, statements, arguments, etc., we find it impossible to set out the evidence relating to each of said assignments, or to discuss in detail the many propositions thereunder without making this opinion inexcusably long. We shall, therefore, content ourselves by saying that we think the evidence sufficient to support the findings of the jury hereinbefore stated, and also the judgment of the trial court, irrespective of other findings of the jury not herein stated. Assignments 1 and 2 are overruled.

[1] By the third assignment it is insisted that the trial court erred in permitting the plaintiff, over the objection of the defendant, to testify that during a period of years, 3 to 10 in number, extending back from 2 years prior to the injuries for which he sues in this case, his income was from $4,000, $8,000, to $10,000 per year, being different in different years; because such testimony was not admissible for the reason that it did not tend to prove the true and correct measure of damages claimed by plaintiff, and that it covered a period of time too remote to be considered in measuring the damages claimed by plaintiff.

The assignment cannot be sustained. The plaintiff testified, among other things, that 2 years before the time of his injuries involved in this case he came to Houston to look for a new location to carry on his former business, which he had conducted in the city of Boston, Mass.; that he had been engaged in the purchase and sale of horses and treating diseased horses as a veterinary; that his income from such business during the last year before removing to Houston, and for several years prior thereto, fluctuated considerably during the different years; that his income from such business ran from $5,000 to $8,000 for the last several years; and that he had made as high as $10,000 per year in such business. He testified as follows:

"The reason I came to Houston I was looking for a new location. I wanted to escape the cold weather. I found the conditions in Houston were different from what I expected, and my original plans of business did not exactly comply with my requirements here, so I caught on to something else to do for the time being. Not long after I got to Houston I started into the business of cracking and selling pecans. I established different stands in the city for selling these pecans. Had several very good places. I shipped pecans by wholesale to the East—Cincinnati and other places. I do not recall the names of the parties to whom I shipped at this time. I did well in that business. I had some extremely good stands in the city of Houston. Some brought me as much $20 net each week."

The testimony objected to was admissible, "not as furnishing a means of measure of damages, but as a guide or assistance in en-

abling the jury to exercise sound and just discretion in determining the proper amount." It was proper to show what kind of remuneration would be open to the plaintiff in a business he understood, and which he would have the right to resume, were it not for the injuries which prevented him from again entering that business. 13 Cyc. 202; El Paso Electric Co. v. Murphy, 49 Tex. Civ. App. 486, 109 S. W. 489; Grimmelman v. Railway Co., 101 Iowa, 74, 70 N. W. 93, and authorities cited; Peterson v. Seattle Traction Co., 23 Wash. 615, 63 Pac. 548, 65 Pac. 543, 53 L. R. A. 586; Turner v. Railway Co., 15 Wash. 213, 46 Pac. 246, 55 Am. St. Rep. 883; Railway Co. v. Gee, 27 Tex. Civ. App. 414, 66 S. W. 78; 8 R. C. L. p. 477; Railway Co. v. St. Clair, 21 Tex. Civ. App. 345, 51 S. W. 666; Wells Fargo & Co. v. Benjamin, 165 S. W. 120; Railway Co. v. Green, 182 S. W. 392.

[2] The fourth and fifth assignments are grouped and are as follows:

"The court erred in failing and refusing to instruct the jury to disregard the statement made by C. I. McFarlane, one of plaintiff's attorneys, to the jury while he was addressing the jury in this case in behalf of plaintiff, wherein he stated to the jury that, if they [the jury] found that plaintiff was guilty of contributory negligence, such finding would destroy the effect of their finding that plaintiff was entitled to damages, said statement having been made by such attorney immediately after he had just told the jury if they believed plaintiff was injured to allow him damages for as much as $50,000, if they thought he was entitled to that much, and this statement was immediately followed by the statement above complained of, and in connection therewith, the two statements being connected by the conjunction 'but,' because the effect of such statement, and particularly in view of the circumstances under which, and the connection in which it was made, showed an effort on part of counsel to tell the jury, and said statement had the effect of informing the jury, of the legal effect of a finding by them that plaintiff was guilty of contributory negligence, and that the effect of such finding would be to deny him any recovery, even though the jury might also find that he was entitled to damages, and the court also erred for the reasons stated in failing and refusing to reprimand said attorney for making said statement to the jury.

"The court erred in failing and refusing to instruct the jury to disregard the statement made by Sewall Meyer, one of plaintiff's attorneys, while addressing the jury in behalf of plaintiff as follows: 'You can find that he (plaintiff) was guilty of contributory negligence and turn him away penniless,' because such statement was an effort of counsel to tell the jury, and same had the effect of telling the jury, that the legal effect of a finding by them that plaintiff was guilty of contributory negligence would be to deny any recovery in this case, and the court erred for the reasons just stated in failing and refusing to reprimand said attorney for making said statement and remark to the jury."

The issue as to whether appellee was guilty of contributory negligence was a vital issue in the case, and was by the evidence a sharply drawn issue. A finding by the jury either way on such issue would find support from the evidence.

Such arguments of counsel, as complained of, have often been condemned by the courts of this state as improper. Fain v. Nelms, 156 S. W. 281–284; Patterson v. Bushong, 196 S. W. 962; Railway Co. v. Hodnett, 182 S. W. 9; American Express Co. v. Parcarello, 162 S. W. 930; Railway Co. v. Fleming, 203 S. W. 108; Railway Co. v. Kutac, 72 Tex. 653, 11 S. W. 127.

While the majority of this court hold that the arguments complained of were improper and should not have been permitted by the trial court, still, following the holdings of the decisions in the cases of Fain v. Nelms, Railway Co. v. Hodnett, Railway Co. v. Fleming, and Patterson v. Bushong, above cited, they refuse to reverse the judgment in this case because of the arguments, for the reason that they cannot say that such arguments, under the facts and circumstances proven, probably influenced the jury in finding for the plaintiff on the issue of contributory negligence. The writer, however, cannot agree with the majority in their conclusion on this question. As before stated, the evidence presents a close question upon a vital issue in the case, that is, as to whether the plaintiff was guilty of contributory negligence, as that term was defined by the court. I think a fair and reasonable inference to be drawn from the argument used by counsel is that the jury was in effect told by Mr. McFarlane, counsel for the plaintiff who presented the opening argument, that if they believed plaintiff was injured to allow him damages for as much as $50,000, but if they should find that plaintiff was guilty of contributory negligence such finding would destroy the effect of their finding that plaintiff was entitled to damages, thus inviting the jury to consider the legal effect of their fact findings. When this argument was made counsel for appellant urged proper objection thereto, but the court refused to reprimand counsel, and permitted him to proceed with his argument, apparently holding that such argument was proper. Thereafter, and after counsel for appellant had presented his argument to the jury, Sewall Myer, counsel for appellee, in his closing argument said to the jury:

"You can find that the plaintiff was guilty of contributory negligence and turn him away penniless."

This argument following the argument of counsel McFarlane, and the silence of the trial judge, was an unauthorized and improper appeal to the sympathy of the jury in behalf of appellee, and also a tentative invitation to the jury to consider the legal effect of their findings and to disregard the evidence tending to show contributory negli-

gence on the part of appellee and to find damages for him. Such argument in my opinion is not only in violation of the holdings of the respective courts in the cases of Fain v. Nelms, Railway Co. v. Hodnett, Railway Co. v. Fleming, and Patterson v. Bushong, above cited, wherein the court in substance held that the jury are triers of fact solely, when the case is submitted upon special issues, and in such cases they have nothing to do with the legal effect of their findings; that the effect of their findings is a matter which could not properly concern them; that they are only to find the facts; that arguments, inviting the jury to consider, in finding such facts, what the legal effect would be, are improper, and should not be allowed by the trial court; but they were also violative of the holdings of the courts in the case of Railway Co. v. Kutac, 72 Tex. at page 653, 11 S. W. 127; American Express Co. v. Parcarello, 162 S. W. at page 931.

In Patterson v. Bushong, supra, it is said:

"In a case submitted on special issues the counsel should not discuss in their argument to the jury the effect on the judgment to be rendered by the court of the findings of the jury on the issues tendered. It is true the bill of exception states that upon the objection of defendant's counsel to the remarks of the counsel for plaintiffs here complained of 'the court stopped counsel for plaintiffs,' and instructed the jury that it was their province to answer the issues to them submitted as questions of fact, regardless of their opinion as to the law, and that it was the duty of the court to apply the law to the facts as found by the jury,' but the court declined to withdraw the case from the jury as requested by the defendant. While we are not prepared to say that, under the circumstances related, we would feel bound to reverse the judgment rendered upon this error alone, yet the error is apparent, and we do not feel satisfied that the instruction of the court to the jury removed entirely the natural and probable injurious effects of the improper argument.

"For the reasons indicated the judgment of the trial court is reversed and the cause remanded."

In Railway Co. v. Kutac, supra, it is said:

"The counsel for plaintiffs in his opening argument used this language in addressing the jury: 'Gentlemen, these powerful railroad corporations will not do justice to any one unless compelled to do it. If they were to kill your horse to-day they would not pay you anything for it, but they would tell you to sue and go to the court for your money, and then they would fight you with all their power. They will take any advantage of you they can, no matter how just your case. Now I hope you will make them pay the last cent you can in this case for killing their mother.'

"There is no evidence contained in the record authorizing these remarks. The court properly instructed the jury not to be influenced by them, but the finding of the jury 'for the full amount sued for' indicates that this language was more effective than the court's instruction. Railway Co. v. Cooper, 70 Tex. 67 [8 S. W. 68]."

"For the reasons mentioned we are of opinion that the judgment should be reversed, and the cause remanded."

In American Express Co. v. Parcarello, supra, it is said:

"Can it be said, then, that the remarks of the counsel, when viewed in the light of the court's silence, did not have an improper influence upon the jury, as the same pertained to the vital issue in the case? The majority of this court are of the opinion that said remarks made in the opening argument were calculated to have, and did have, such an influence; nor can it be said that the experienced counsel, in making the remarks, was indulging in idle talk."

The writer has been unable to find any case in which arguments such as complained of here have been, in any manner approved, but to the contrary, in all cases in which they are complained of, they have been condemned. Yet in the face of such repeated condemnation by the courts, eminent counsel continue to indulge in them. Why, may we ask? Is it not apparent that they think that such arguments will probably bring about the rendition of a verdict favorable to their clients which would not otherwise be rendered? If not, why do they persist in such arguments? Are such experienced counsel merely making idle talk without hope of reward? I think not. Then, if these experienced counsel think that such arguments do probably influence the jury in their favor, why should this court say that no such probable effect would follow? Counsel should not be permitted to make such arguments in the face of repeated disapproval by the appellate courts, and then be heard to say, in answer to a complaint thereof on appeal, that they were harmless. The courts should not and, in my judgment, will not long, continue to disapprove such arguments only, but will reverse judgments which probably resulted only by reason thereof, and thus put an end to the repeated just complaints with which the appellate courts are often confronted.

[3, 4] By the sixth assignment the contention is made that the court erred in permitting plaintiff to introduce in evidence a certified copy of an ordinance of the city of Richmond which provides:

"That it shall be unlawful for any railroad engineer, or other person in charge thereof, to propel any engine or train through any part of the limits of the city of Richmond at a greater rate of speed than six miles per hour"

—and which imposed a penalty for its violation: First, "because it does not include the defendant within the scope of its operation, and has no application to defendant"; second, because it was not shown that said ordinance was, at the time of the accident or collision involved in this case, a valid, enacted, and enforceable ordinance of said city according to the laws of the state of Texas.

It was shown by the testimony of T. B. Wessendorff, mayor of said city, and C. Rice, the then secretary of said city, that said ordinance was passed by the city council in 1909, and was properly recorded in the book of ordinances of said city. T. B. Wessendorff also testified that said ordinance, just after its passage, was published in the newspapers where all the official acts of the city were published; that said newspaper was a paper with a circulation around over the county and through the state. He also testified that said ordinance had never been repealed, and that it was in force and effect on the 8th day of April, 1915, the time of the accident involved in this case.

By article 821, Vernon's Sayles' Civil Statutes, it is provided that:

"All ordinances of the city, where printed and published by authority of the city council, shall be admitted and received in all courts and places without further proof."

In the case of St. Louis, Southwestern Railway Co. of Texas v. Garber, 108 S. W. first column, page 743, it was held that the court did not err in admitting in evidence an ordinance making it a misdemeanor, punishable by fine, for any person to operate a locomotive or car within the corporate limits of the city at a greater rate of speed than 6 miles per hour, because a sufficient predicate for the introduction of such ordinance, under the article quoted, was made by the testimony of secretary of the city that the ordinance was printed and published by authority of the city council; that the statute does not expressly require that proof of such publication shall be made only by the introduction in evidence of the order of the council, and therefore the production of such order was not indispensable; and that proof of such publication might be made by the oral testimony of one who is able to testify that such publication was in fact made. See, also, Muir's Administrators v. City of Bardstown, 120 Ky. 739, 87 S. W. column 1, p. 1099.

We think the proof made was sufficient to authorize the admission in evidence of the ordinance involved in this case, and the court did not err in so holding.

Neither do we think the court erred in permitting Wessendorff, the mayor, to testify that said ordinance was in force and effect at the time of plaintiff's injury, as contended by appellant in its seventh assignment.

[5] The court permitted the mayor, Wessendorff, and secretary, C. Rice, to testify, over the objection of appellant, that they had, prior to the 8th day of April, 1915, talked with the officials of the defendant company about the condition of the crossing where plaintiff was later injured, and that in said conversation they asked said officials to put a flagman at said crossing or to put in bells, an electric device, at the same, and that in

this conversation Mr. Van Vleck, an official of defendant, said he would send a man over at once to look the matter over and let them hear from him; that a man was sent to Richmond, and that they went with him and looked at the crossing. Appellant has made the action of the court in admitting this testimony the grounds of its eighth and ninth assignments. We think this testimony, in connection with other testimony with reference to the condition of said crossing, admissible as tending to show negligence on the part of appellant, as alleged by appellee.

[6] We overrule the tenth and eleventh assignments, which complain of the action of the court in permitting Dr. York and Dr. Murray to testify as to the physical and mental condition of appellee after he had received his injuries, and in permitting J. W. Hicks to testify that after appellee was injured he could not rise from a sitting posture and walk as well as he could before he was injured, and that he could not carry on a connected conversation, as he could do prior to the accident; the objection being that this testimony was but the conclusion of the witnesses. Chicago, R. I. Ry. Co. v. Long, 26 Tex. Civ. App. 601, 65 S. W. 882. There is no merit in such contention.

[7] By its twelfth assignment appellant insists that:

"The court erred in permitting plaintiff's witness, I. Jacobs, over defendant's objection, to testify that the train which collided with the automobile was moving at the rate of about 15 miles per hour at the time he came to the door of a store in which he then was, and when he first saw the train, because the witness was not shown to be qualified to testify to the speed of a train, and said testimony was a conclusion of the witness, invading the province of the jury."

This testimony was clearly admissible, and the court did not err in so holding.

Assignments 13 to 18, inclusive, in varying forms, complain of the refusal of the court to sustain the appellant's 25 or more objections to the charge of the court. We have examined the charge of the court, and do not think it subject to any of the objections urged, except objection No. 7, set out under the fifteenth assignment. We find that the submission of this issue, and the answer of the jury thereto, though unsupported by evidence, was harmless, as the findings of the jury on the other issues amply support the judgment rendered.

[8] It is insisted by the nineteenth assignment that the verdict of the jury for $20,000 and the judgment rendered for such sum is greatly excessive. It was shown by the evidence that at the time of his injury appellee had an expectancy of life of 15 or 16 years. Appellee testified that he had lived in Boston, Mass. for about 25 years before coming to Houston, 2 years before the acci-

dent; that for several years, while living in Boston just prior to coming to Houston, he had earned from $5,000 to $10,000 per year; and that he had come South because it was too cold for him in Boston, and for the purpose of looking out a new field to continue his former business. The evidence shows that appellee was permanently injured and totally disabled from performing profitable labor. Under this state of the evidence we would not feel justified in holding that the verdict and judgment are excessive in amount.

[9] By the twentieth, twenty-first, and twenty-second assignments insistence is made that the evidence conclusively shows that the injuries of appellee were temporary in their nature, and that appellee had entirely recovered from his injuries received by reason of the collision with appellant's train. There is no merit in this contention. The evidence was amply sufficient to sustain the findings of the jury that such injuries were permanent.

What we have said with reference to assignment 15 is a full answer to the contention made by the twenty-third, twenty-fourth, and twenty-fifth assignments.

[10] By the twenty-sixth and twenty-seventh assignments complaint is made of the finding of the jury that the speed of the train was a proximate cause of appellee's injuries. The evidence was sufficient to support the finding of the jury upon this issue.

By the twenty-eighth, twenty-ninth, and thirtieth assignments insistence is made that the finding of the jury that the train in question was running at the rate of 18 miles per hour at the time of the collision is unsupported by the evidence, and, to the contrary, the evidence shows that said train was being operated at a moderate rate of speed, not exceeding 6 miles per hour. We think the evidence amply sufficient to support the finding of the jury. Several witnesses testified that the train was running from 15 to 30 miles per hour at the time of the collision, and it was shown that when the train struck the automobile in which appellee was riding he and one of the other occupants thereof were thrown 50 to 60 feet from the point of collision.

Assignments 31 to 39, inclusive, are complaints of the answer of the jury to certain special issues submitted by the court, the contention being that such answers are not supported by the evidence. We overrule all of these assignments. We think such answers are sufficiently sustained by the evidence.

The fortieth, forty-first, forty-second, and forty-third assignments complain of the refusal of the trial court to give to the jury appellant's requested charges 3 and 4, and in giving an additional charge to the main charge. The complaint is not tenable. The additional charge of the court complained of practically presents the substance of the re-

quested charges, and was doubtless given to meet the request thus made.

There is no error presented by assignments 44 and 45. They are therefore overruled.

The majority of the court being of the opinion that no error such as should cause a reversal of the judgment of the trial court has been presented, such judgment is affirmed. The writer dissenting as indicated herein.

Affirmed.